**CENTER FOR AUTO SAFETY, et al., Appellants**

v.

**Elizabeth H. DOLE, Secretary, Department of Transportation, et al.**

**No. 86–5436.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 7, 1987.

Decided Sept. 8, 1987.

---

Howard A. Heffron, with whom Clarence M. Ditlow III, Mary H. Dunlap and Evan W. Johnson, Washington, D.C., were on the brief for appellants.

David W. Allen, Asst. Chief Counsel, Nat. Highway Traffic Safety Admin., Richard K. Willard, Asst. Atty. Gen., Douglas Letter, Appellate Litigation Counsel, Dept. of Justice, Erika Z. Jones, Chief Counsel, Enid Rubenstein and Eileen T. Leahy, Attys., Nat. Highway Traffic Safety Admin., Washington, D.C., were on the brief for appellees.

Before WALD, Chief Judge, MIKVA and BORK, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

Dissenting opinion filed by Circuit Judge BORK.

WALD, Chief Judge:

This case concerns the availability and scope of judicial review of the National Highway Transportation Safety Administration's (NHTSA) decision to deny the Center for Auto Safety's (CAS)[1] petition to reopen an enforcement investigation against the Ford Motor Company for safety defects in automobiles built between 1966 and 1979. The National Traffic and Motor Vehicle Safety Act of 1966,[2] as amended, states that if the Secretary of Transportation makes a final determination that a safety-related defect exists, the Secretary of Transportation *"shall* order the manufacturer [to recall and remedy] such defect...." 15 U.S.C. § 1412(b).[3] The Act also provides that "[a]ny interested person" may petition the Secretary "to commence a proceeding to determine whether to issue a[ ] [final] order pursuant to section 1412(b)." *Id.* § 1410a(a). The NHTSA regulations provide that the agency will grant a petition if the agency finds that there is a "reasonable possibility" of a safety-related defect in the manufacturers' cars. 49 C.F.R. § 552.8 (1987). NHTSA's

---

1. In addition to CAS, there are three individual plaintiff-owners of the involved vehicles in this case. The District Court held that the organizations and individual plaintiffs have standing to bring their claim because they satisfy the injury-in-fact, causation, and redressability components of current standing law. *See Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (standing under Article III); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (standing under the Administrative Procedure Act, 5 U.S.C. § 702). The government does not contest that determination on appeal, and we see no reason to question its validity.

2. This statute is hereinafter cited as "Motor Vehicle Safety Act" or "Act."

3. The Secretary has delegated her authority under the Motor Vehicle Safety Act to NHTSA. Consequently, we will refer primarily to NHTSA when discussing the government agency in this case.

regulations also state the decision to grant or deny a petition is to be based on a "technical review" of evidence relevant to the safety issue. *Id.* § 552.6. In this case, the CAS challenges the Secretary's denial of its petition to reopen as arbitrary and capricious. The District Court found that the Secretary's decision was unreviewable under *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), but, even if reviewable, that the scope of review under *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), must be limited to an examination of the agency's stated reasons for its decision.

▮▮▮ We hold that denials of petitions to investigate alleged safety defects under 15 U.S.C. § 1410a and 49 C.F.R. § 552.8 are subject to judicial review under the Administrative Procedure Act (APA) to assure (1) that NHTSA acts according to its own "reasonable possibility" standard and (2) that its finding of no "reasonable possibility" is not "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). We also hold that in order to conduct review of the agency's finding on the likelihood of a safety-related defect, the court must examine not merely the statement of reasons given by the Administrator, but the evidence compiled in the "technical review," on which the agency relies in making its decision. Consequently, we reverse the decision of the District Court denying and limiting review, and remand for a decision based on the usual standards of review under the APA.

## I. BACKGROUND

### A. *Statutory and Regulatory Framework*

The Motor Vehicle Safety Act establishes certain standards governing the treatment of citizen petitions to investigate alleged safety defects:

> Within 120 days after the filing of a petition ..., the Secretary shall either grant or deny the petition. If the Secretary grants such petition, he shall

promptly commence the proceeding requested in the petition. If the Secretary denies such petition he shall publish in the Federal Register his reason for such denial.

*Id.* § 1410a(d). Although the Act does not lay down any specific procedure or standard for making petition decisions, it does state that "[t]he Secretary may hold a public hearing or may conduct such investigation or proceeding as he deems appropriate in order to determine whether or not such petition should be granted." *Id.* § 1410a(c).

NHTSA has, however, itself promulgated a detailed set of regulations which "establishes procedures for the submission and disposition of petitions filed by interested persons pursuant to [15 U.S.C. § 1410a]." 49 C.F.R. § 552.1 (1987). In relevant part, these regulations stipulate that "[t]he appropriate Associate Administrator conducts a technical review of the petition, to determine whether there is a reasonable possibility that the requested order will be issued at the conclusion of the appropriate proceeding." *Id.* § 552.6.

This "technical review" is based on evidence available to NHTSA from one or more potential sources: the petition itself, "information already in the possession of the agency," "the collection of additional information," or the collection of evidence at a "public meeting." *Id.* Then:

> At the conclusion of the technical review, the Administrator or his delegate determines whether there is a reasonable possibility that the order requested in the petition will be issued at the conclusion of the appropriate proceeding. *If such reasonable possibility is found, the petition is granted.* If is it not found the petition is denied.

*Id.* § 552.8 (emphasis added). Under this regulation, it is undisputed that the petition to open an investigation must be granted if "there is a reasonable possibility that [a safety-related defect exists]," [4] and that the

---

**4.** Although the operative language of 49 C.F.R. § 552.8 is drafted in the present tense, there is no question but that this regulation establishes an administrative rule that the agency is bound

to follow. When NHTSA promulgated this regulation, it clearly acknowledged its binding nature. In the Federal Register statement accompanying the release of the regulation, NHTSA

"reasonable possibility" determination is to be based on an analysis of the evidence compiled in the "technical review."

## B. *The Relevant Facts of This Case*

This appeal concerns alleged defects in automatic transmissions built between 1966 and 1979 by the Ford Motor Company. Appellants claim that the defects cause Ford cars to disengage from "Park" and roll without warning. On March 6, 1985, they petitioned NHTSA to open an investigation that would lead to an order requiring Ford to remedy the defective transmissions. An earlier NHTSA investigation of similar allegations had been terminated without a final determination on the existence of a defect, when NHTSA and Ford entered a settlement agreement that required Ford to notify owners about the possibility of a defect. Under the settlement agreement, however, NHTSA explicitly reserved the right to commence a new proceeding on the alleged defect if additional facts warranted such action. *See Center for Auto Safety v. Lewis*, 685 F.2d 656, 661 n. 5 (D.C.Cir. 1982).[5] In their March 1985 petition, appellants claimed to have such additional evidence as to warrant the opening of a new investigation on the matter.

On July 12, 1985, the NHTSA Administrator denied appellants' petition, stating that her review of the evidence in the administrative record, including appellant's petition, new information received from Ford and other car manufacturers, and internal NHTSA accident reports, had failed to "convince[ ]" her "that a final defect determination is now warranted or even

likely if further investigation were undertaken." Appellee's Appendix at 35. It is that determination which CAS unsuccessfully sought to have reviewed in the District Court.

## II. AVAILABILITY OF JUDICIAL REVIEW

Under the Administrative Procedure Act, NHTSA's denial of appellant's petition is subject to judicial review unless Congress has "affirmatively precluded review" in the Motor Safety Act or unless NHTSA's decision is not governed by a "meaningful" legal standard against which a court can measure its validity. *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). The first exception to APA review, affirmative preclusion by Congress, derives from 5 U.S.C. § 701(a)(1); the second, lack of judicially manageable standards, derives from § 701(a)(2).[6] In *Chaney*, the Supreme Court observed that "an agency decision not to enforce" usually is not governed by "judicially manageable standards" and "often involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise"; therefore it "should be presumed immune from review under § 701(a)(2)." *Id.* at 830–32, 105 S.Ct. at 1655–56. The *Chaney* Court, however, also "emphasize[d] that the [nonenforcement] decision is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832–33, 105

stated that the "reasonable possibility" standard "limits the discretion of the Administration." 40 Fed.Reg. at 42013. Moreover, NHTSA recognized that this standard limits its discretion in two directions: the Administrator cannot grant a petition if a "reasonable possibility" is lacking and it must grant the petition if a "reasonable possibility" exists. *See id.* Furthermore, the Federal Register notice states that it "describes the procedures that the NHTSA *will follow* in acting upon such petitions." *Id.* (emphasis added). It is beyond dispute, then, that these regulations are "legislative" and not "interpretive" rules and therefore are binding on the agency. *See* K. Davis, Administrative Law Treatise § 7.21; *see also Community Nutrition Institute v. Young*, 818 F.2d 943 (D.C.Cir.1987) (FDA's

"action levels," or the maximum amount of a contaminant that a good product may contain, are binding on the agency's prosecutorial discretion and therefore are legislative rules).

5. In the *Lewis* decision, this court upheld the validity of the settlement agreement between NHTSA and Ford. *See* 685 F.2d at 663.

6. 5 U.S.C. § 701(a) states in full:

This chapter [§§ 701–706] applies according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

S.Ct. at 1656. It is critical for our purposes to note that *Chaney* was explicitly based on § 701(a)(2)—the "no law to apply" section of the APA—and in no way implicated § 701(a)(1), the congressional preclusion exception.

## A. *The "Law to Apply" in This Case*

The *Chaney* Court said it was "leaving to one side the problem of whether an agency's rules might under certain circumstances provide courts with adequate guidelines for informed judicial review of decisions not to enforce." *Id.* at 836, 105 S.Ct. at 1658. This case, however, squarely presents that situation in which an agency's own regulations do contain a "judicially manageable" standard for making nonenforcement decisions. The "reasonable possibility" standard of NHTSA's own regulations clearly requires NHTSA to make a factual judgment about the chances that a safety-related defect exists, based on the evidence compiled during the "technical review" prescribed by 49 C.F.R. § 552.6. This kind of factual judgment is definitely susceptible to judicial review, although, of course, under the APA, a reviewing court would set aside a NHTSA decision that no "reasonable possibility" of a safety-related defect existed only if there was no substantial support for that finding in the evidence before the Administrator. *See Lorion v. Nuclear Regulatory Commission,* 785 F.2d 1038 (D.C.Cir.1986); *Association of Data Processing Service Organizations, Inc. ("ADPSCO") v. Board of Governors,* 745 F.2d 677 (D.C.Cir.1984). But although the court must accord the agency the appropriate degree of deference on such a record-based finding involving scientific and technological data, *see Lorion,* 785 F.2d at 1042, the court is still entirely capable of judging whether NHTSA's "reason-able possibility" decision was "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). *Chaney's* concerns are therefore met.

Indeed, by confining the grounds for a decision to grant or deny a petition to the likelihood of a safety-related defect, § 552.8 itself rules out consideration of other discretionary factors like "whether agency resources are best spent on this violation or another" or "whether the particular enforcement action requested best fits the agency's overall policies." These other resource and priority factors, not at issue in NHTSA's petition decisions, are the ones that *Chaney's* rationale said rendered nonenforcement decisions presumptively unreviewable under § 701(a)(2). Thus, the "reasonable possibility" standard NHTSA laid down in its own regulations amply rebuts the *Chaney* presumption against reviewability.

Indeed, if the "reasonable possibility" standard had appeared in the Motor Vehicle Safety Act itself, there could be no doubt that it provided a "judicially manageable" review standard. But the Supreme Court has told us that "[s]o long as [an administrative] regulation is extant it has the force of law," *United States v. Nixon,* 418 U.S. 683, 695, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974). Therefore, NHTSA's own regulation containing the "reasonable possibility" review standard is the legal equivalent of a statutory standard for *Chaney* purposes.[7] It is binding law governing the agency's decisions in this realm and, as long as it is on the books, it must be followed. In sum, § 552.8 provides a reviewing court with "law to apply" for the purposes of § 701(a)(2). *See California Human Development Corp. v. Brock,* 762 F.2d 1044, 1048 n. 28 (D.C.Cir.1985); *accord id.* at 1053 (Scalia, J., concurring).[8]

---

7. As this court has recently said, "Judicially manageable standards may be found in formal and informal policy statements and regulations as well as in statutes." *Padula v. Webster,* 822 F.2d 97, 100 (D.C.Cir.1987). In *Padula,* however, the court concluded that language contained in various FBI letters and statements did not constitute binding policy that limited the agency's discretion. In this case, by contrast, the agency has promulgated a regulation containing the "reasonable possibility" standard, and as we have explained, *see supra* n. 4, this regulation constitutes a legislative rule that does curtail the agency's discretion.

8. In the *California Human Development Corp.* case, appellants challenged the Labor Department's (DOL) allocation of funds under the Job Training Partnership Act, claiming, in part, that "the DOL violated its own regulations by failing to use the best data available and by failing to

### B. *The Issue of Statutory Preclusion of Judicial Review*

NHTSA, however, raises an additional objection to review, not ruled on by the District Court. It argues that the Motor Vehicle Safety Act has "affirmatively precluded" judicial review in this case.

In addressing this issue, we stress at the outset that there is nothing in the Act remotely resembling an express preclusion of judicial review of decisions not to grant citizen petitions. Although it is of course always possible in compelling circumstances to infer from the structure or history of a silent statute a congressional intent to preclude review, *see Block v. Community Nutrition Institute*, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), that is clearly the unusual case, not the norm, and the evidence, we are told, must be very "clear and convincing" to overcome the normal presumption of review. *See, e.g., Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 2136, 90 L.Ed.2d 623 (1986) (internal quotations omitted).

The government here relies on a few isolated and decidedly equivocal pieces of legislative history to make its case of affirmative preclusion. The House bill as originally introduced provided that "[i]f the Secretary denies the petition made under this section, ... the petitioner may commence a civil action in a United States district court to compel the Secretary to commence or complete the proceeding (or both), as requested in the petition," H.R. 5529, § 7, 93d Cong., 1st Sess. (1973). The House Committee on Interstate and Foreign Commerce deleted this provision when it reported the bill to the floor. *See* H.R. Rep. No. 1191, 93d Cong., 2d Sess. 9 (1974), U.S.Code Cong. & Admin.News 1974 p. 6046. This skeletal sequence, however, fails, by itself, to establish an intent to preclude the normal avenues of judicial re-

view open under the APA for agency decisions. Critically, it omits mentioning the crucial distinction between the kind of *de novo* full-blown judicial review provided in the original House bill and the more limited judicial review regularly available under the APA, 5 U.S.C. § 706, which we are applying in this case.

The original version of H.R. 5529 stated that "if the petitioner can demonstrate to the satisfaction of the court, by a preponderance of the evidence in a *de novo* proceeding before such court, that the motor vehicle or motor vehicle equipment involved presents an unreasonable risk of injury ... or defect which relates to motor vehicle safety ... and that the failure of the Secretary to commence or complete the proceeding as requested in the petition unreasonably exposes the petitioner or other consumers to a risk of injury ... the court shall order the Secretary to commence or complete the proceedings (or both), as required in the petition." H.R. Rep. 5529, § 7, 93d Cong., 1st Sess. (1973). A grant of judicial authority to make a *de novo* determination of safety risks when an agency has declined to undertake an enforcement action would indeed be a drastic innovation in the normal relationship between agencies and courts. By comparison, the usual, far more limited kind of judicial review under the APA involved here represents the norm for agency review, and to preclude it would be a distinct departure from Congress' usual practice.

The APA prohibits a reviewing court from considering new evidence that was not before the agency when it made its decision. The APA does not permit a reviewing court to decide which side of the factual dispute it thinks "the preponderance of the evidence" in the administrative record falls on. Rather, as we have al-

---

allocate the funds equitably." 762 F.2d at 1048. We held *Chaney* to be inapplicable and instead held that the DOL's own regulation provided the court with "law to apply" for the purpose of reviewing the funds allocation decision. 762 F.2d at 1048 n. 28. Then Judge, now Justice, Scalia agreed with the majority that the Labor Department's own regulation could provide a source of "law to apply." "Since the statutory

provisions establish 'no law to apply' by which we might review the Secretary's discretionary judgment, it remains [for us] to consider whether the Secretary's regulations do so." *Id.* at 1053 (citation omitted). He ultimately disagreed with the majority's conclusion that the regulations in that case did provide the court with a judicially manageable standard.

ready mentioned, judicial review under the APA requires that the agency's decision be upheld as long as there is enough support in the record to assure it is not "arbitrary." *See ADPSO, supra,* 745 F.2d at 683–84. Given these important differences between the usual form of judicial review accorded agency decisions and the House bill's standard, one can well understand why Congress decided to delete the provision for *de novo* judicial review. It by no means logically follows, however, that by so doing Congress intended to preclude the much more limited form of judicial review generally available under the APA as well.

There is another crucial distinction between the omnibus type of judicial review Congress declined to provide here and the garden-type variety kind of judicial review we find applicable in this case. The judicial review provision of the original bill bound the Secretary to a specific legal standard for judging § 1410a petitions: whether or not "the motor vehicle equipment involved presents an unreasonable risk of injury." H.R. 5529. In eliminating the judicial review provision, Congress was undoubtedly motivated in great part by its intention that the statute itself not subject the Secretary to a specific legal standard for judging these petitions.

In this case, as we have seen, appellants are seeking review, not on the basis of the statute alone, but on the basis of a legal standard contained in the agency's own regulations implementing the statute. Even when a statute grants an agency broad discretion in making a decision and itself provides no basis for review of that decision, it is well-settled that judicial review still exists to require the agency to follow procedural or substantive standards contained in its own regulations, which curtail the discretion conferred by statute. *See, e.g., Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Padula v. Webster,* 822 F.2d 97 (D.C.Cir.1987). While we agree with the dissent that the existence of an administrative regulation cannot confer judicial review over an agency decision that Congress has affirmatively decided to render immune from judicial review, *see Harrison v. Bowen,* 815 F.2d 1505, 1517 (D.C.Cir.1987), that obvious proposition is not at issue here. Congress has in no way affirmatively precluded judicial review over the denial of enforcement petitions. Rather, the relevant dispute between ourselves and the dissent is whether this court should *infer* a congressional intent to preclude judicial review of an agency's decision in a situation where review is sought on the basis of a legal standard contained in one of the agency's own regulations. Unlike the dissent, we cannot conclude that by taking out the *de novo* judicial review provision of the original bill the House Committee—or the Congress as a whole—intended to prohibit a court from reviewing in an ordinary fashion under the APA a denial of a § 1410a petition in order to determine whether the agency adhered to a legal standard contained in one of its own regulations. Nor do we find any other evidence in the legislative history that Congress intended to preclude this limited form of judicial review.[9]

9. The dissent cites a letter to the House Committee Chairman from the Secretary of Transportation expressing his Department's pleasure that the House Committee deleted the judicial review provision contained in the original bill, which in his words "would have authorized use of the courts to compel, without consideration of such factors as available technology and resources, a reordering of the priorities we have established to carry out the purposes of the Act." H.R.Rep. No. 93–1191, 93d Cong., 2d Sess. 34 (1974), U.S. Code Cong. & Admin. News 1974, p. 6079. We can well understand why the Secretary would be "very pleased" that Congress not subject the agency's enforcement decision to *de novo* judicial supervision according to a fixed statutory standard. But we do not understand the Secre-

tary to be suggesting that if his Department voluntarily promulgated regulations which confined its decisions on whether to *open* an investigation to the question of whether a citizen's petition presents a reasonable possibility that a defect exists, without consideration of other investigative priorities (at least at this *initial* stage of the administrative process), a court nonetheless could not hold him and his department to his regulation as long as it remained on the books. Such a proposition would contradict a "venerable principle" that "lies at the foundation of the modern administrative state." *Reuters Ltd. v. FCC,* 781 F.2d 946, 947 (D.C.Cir.1986). Even if the Secretary of Transportation might have wished immunity from this well-settled, fundamental principle, his letter was not so

### C. *The Service Principle and Its Applicability to This Case*

■ The dissent argues a congressional intent to preclude judicial review of decisions denying § 1410a petitions primarily on the basis of the discretion granted the Secretary in § 1410a(c) as to how to handle these petitions. Such an inference, however, runs entirely counter to the principle that a court will require an agency to follow the legal standards contained in its own regulations despite the fact that a statute has granted the agency discretion in the matter. In *Service v. Dulles, supra,* the relevant statute granted the Secretary of State "absolute discretion" in deciding whether to terminate the employment of Foreign Service officers. 354 U.S. at 370, 77 S.Ct. at 1156 (quoting 60 Stat. 458). The Supreme Court nevertheless held that judicial review exists to determine whether the Secretary followed legal standards contained in his own regulations:

> While it is of course true that under [the relevant statute] the Secretary was not obliged to impose upon himself these more rigorous substantive and procedural standards, neither was he prohibited from doing so, ... and having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them.

*Id.* at 388, 77 S.Ct. at 1165. If a statutory grant of broad discretion provided a sufficient basis for inferring a congressional intent to render an agency's decision immune from judicial review, even for the limited purposes of determining whether the agency complied with legal standards contained in its own regulations, the Supreme Court in *Service* would never, as it surely did, have instructed a court to conduct precisely that kind of review. But as the *Service* decision makes plain, a statutory grant of discretion does not provide a basis for inferring that Congress intended to prohibit a court from reviewing an administrative decision in order to determine whether the agency has adhered to its own legally binding standards. Rather, there

must be a much more definitive source of evidence that Congress intended to immunize an administrative decision form of judicial review.

The dissent points us to no such source. It cites only the structure and legislative history of the Act as grounds for inferring an intent to preclude review in this case. But neither of these sources reveals any "fairly discernible" intent to preclude the form of review sought in this case, namely a determination of whether NHTSA adhered to the standard set forth in its own rule. *Cf. Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (a case in which the statutory scheme of the Agricultural Marketing Agreement Act of 1937 presented a "fairly discernible" congressional intent to allow milk "handlers" but not milk consumers to challenge certain administrative pricing orders as unlawful under the Act). Arguing from structure, the dissent states that because the Act expressly provides for some form of judicial review at other stages of the administrative process, Congress must have intended that denials of § 1410a petitions be immune from review. But this questionable methodology for presuming an affirmative intent to preclude normal judicial review, even if appropriate for interpreting some other statutory scheme, is simply not legitimate with respect to the 1974 amendments to the Motor Vehicle Safety Act. For the Conference Report on the 1974 amendments states: "The conferees discussed but decided to take no position on whether or not pre-enforcement judicial review is available under the conference substitute. The conferees decided to leave that question to the courts." Conf.Rep. 1452, 93d Cong., 2d Sess. 32 (1974). The dissent attempts to confine the impact of that statement to pre-enforcement actions by car manufacturers. There is no evidence of such a limited impact. Nonetheless, even if we accepted the dissent's assumption that the term "pre-enforcement judicial review" in

bold to express this wish explicitly, and we certainly cannot, on the basis of this ambiguous, after-the-fact expression by a nonlegislative

member, attribute to Congress an intent to deviate from this basic principle of administrative law.

this context referred only to circumstances in which a car manufacturer (rather than a car owner) seeks court review of a NHTSA decision prior to the time when the agency brings a civil enforcement action, it would still demonstrate our main point: the mere absence of an express provision of judicial review in the text of the statute for a particular kind of administrative decision cannot by itself mean that Congress intended to affirmatively preclude judicial review over that decision. Otherwise, there would be no point at all to the Conference Committee's declination to decide on judicial review of any pre-enforcement decisions.[10] Given this additional bolster in the legislative history that Congress did not intend to preclude judicial review in all situations where it did not affirmatively grant it, we are unwilling to infer an intent to prohibit

review under the APA of a denial of a § 1410a petition to determine whether NHTSA complied with its own standards for denying such petitions.[11]

The legislative materials on which the dissent relies just do not add up to a "fairly discernible" intent to preclude the kind of judicial review sought in this case. The dissent's structural argument is negated by specific legislative history showing that Congress definitely did not "carefully provide judicial review in specified circumstances but deliberately with [o]ld review" in other, "pre-enforcement" circumstances. Diss. op., *infra* at 817. The deletion of *de novo* review from the original House bill cannot be fairly taken as precluding judicial review under the deferential "arbitrary" or "capricious" standard of the APA when the

---

**10.** The Conferees' reference to "pre-enforcement judicial review" appears in a discussion of the Act's provision for court enforcement of an administrative order against a car manufacturer. This context suggests that the conferees may have been considering specifically only the question of whether a car manufacturer could have obtained judicial review of NHTSA decisions before the Secretary brings a judicial action against the manufacturer. But if the legislative history shows that the conferees specifically considered but did not decide to preclude pre-enforcement judicial review for car manufacturers, it indicates that Congress as a whole did not specifically consider and decide to preclude pre-enforcement judicial review for car owners under the APA. Otherwise, there would be some mention of such a specific intent and there is none. Rather, the legislative history suggests that Congress left the entire problem of pre-enforcement judicial review for the courts to decide.

Indeed, there is an additional reason to doubt that Congress would have decided to leave open the possibility of pre-enforcement judicial review for car manufacturers, but foreclose any pre-enforcement judicial review for car owners or other citizens whose petitions for investigation of a possible safety defect have been denied. The car manufacturers, of course, eventually get their day in court to contest any final order on a safety determination. Any separate challenge on their part to an administrative safety determination, before the agency seeks court enforcement of its final administrative order, might be considered premature. For the citizen petitioners, however, an administrative decision denying their petition on the grounds that no "reasonable possibility" of a safety defect exists terminates their administrative claim. If these petitioners are to receive any judicial

review at all, it must come when the agency has denied their petition.

In any event, the legislative history concerning "pre-enforcement judicial review" for car owners is inconclusive. When the legislative history is ambiguous, the normal rule that judicial review exists to hold an agency to legal standards contained in its own regulations should apply.

**11.** Normal judicial review of informal agency action under the APA, 5 U.S.C. § 706(2)(A), requires the court to determine whether the agency acted on the basis of legally impermissible reasons. We do not see how Congress could have intended to prohibit a court from reviewing a denial of a § 1410a petition to determine whether the denial was based on the standard called for by the agency's own regulations—and not on the basis of some other reasons made legally impermissible by the promulgation of that standard. Whether or not a court can review under the APA a denial of a § 1410a petition to determine if the agency had some factual support for a conclusion that the standard contained in its own regulations was not met is an issue we address in Part III of this opinion. But we understand the dissent's position, in arguing that the Motor Vehicle Safety Act "foreclose[s] review" under the APA, diss. op., *infra*, at 817, to be that a court cannot review a denial of an enforcement petition to determine whether NHTSA properly confined itself to the standard mandated by its own rules or instead impermissibly judged the petition on the basis of some other standard. Because we find no congressional intent to prohibit a court from holding NHTSA to standards contained in its own legally binding regulations, we do not share the dissent's conclusion that the Motor Vehicle Safety Act likely renders petition denials immune from judicial review under the APA.

agency's own regulations provide judicially manageable standards for that review. The only other basis on which the dissent relies for arguing preclusion of all review is the wide discretion the statute confers upon the Secretary in making these decisions. But, as we have discussed, reliance on this discretion to preclude review, when the statute itself is silent on the subject, and the legislative history is at best inconclusive, contradicts the principle of the *Service* case, which is that a court will require an agency to adhere to its own regulations "even when the administrative action under review is discretionary in nature." *Service,* 354 U.S. at 372, 77 S.Ct. at 1157.

Nor do we believe that the *Service* principle no longer holds true because today's case, unlike *Service,* involves a nonenforce-

ment decision. The principle has been applied even in the context of criminal prosecutions. *See United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974).[12] Logically, there is no reason not to apply it to agency discretion concerning enforcement proceedings as well as to other forms of agency discretion.[13] The *Chaney* presumption against judicial review of an agency's nonenforcement decisions, derived from subsection *(a)(2)* of 5 U.S.C. § 701, is an adequate vehicle by which to prevent undue judicial interference into agency priority-resource decisions. That presumption, of course, stems from the usual lack of "judicial manageable standards" governing these kinds of decisions and is rebuttable by the

---

**12.** *Nixon* is the famous Watergate tapes case. A preliminary issue for decision was whether the judiciary could review a dispute between the Special Prosecutor and the President concerning "what evidence is to be used in a given criminal case." 418 U.S. at 693, 94 S.Ct. at 3100. The Court found that the dispute was reviewable because a Justice Department regulation had given "the Special Prosecutor explicit power to contest the invocation of executive privilege in the process of seeking evidence deemed relevant to the performance of [the Special Prosecutor's] duties." *Id.* at 694–95, 94 S.Ct. at 3100–01 (footnote omitted). Holding that the regulation provided a basis for judicial resolution of the dispute, the Supreme Court stated: "So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and enforce it." *Id.* at 696, 94 S.Ct. at 3101–02. If an administrative regulation can provide a basis for court review of a dispute *within* the Executive Branch concerning how to prosecute a criminal trial, then surely an administrative regulation can establish the basis for judicial review of a citizen's challenge to an administrative agency's decision not to institute a proceeding on an issue of public safety.

**13.** Indeed, in this respect it is worth comparing the facts of *Service* and this case. Although the Motor Vehicle Safety Act allows the Secretary of Transportation considerable discretion in making these petition decisions, this statutory grant of discretion is certainly less than "the absolute discretion" conferred upon the Secretary of State in the *Service* case. In any event, NHTSA has "imposed upon" itself "more rigorous substantive and procedural standards" than contained in the relevant statute in *exactly the same way* that the State Department did in the *Service* case. In *Service,* the Secretary's regulations

provided that the Secretary must have "reasonable grounds," based on evidence compiled in an administrative proceeding, that the termination is in the interest of national security.

The substantive "reasonable possibility" standard here corresponds to the "reasonable grounds standard there. And the regulations in both cases provide procedurally that the administrative decision will be based on evidence compiled in any administrative proceeding. Thus, the precise manner in which the regulations curtail the agency's statutory discretion is also the same in the two cases.

Moreover, as in *Service,* the relevant statute here in no way prohibits the agency from limiting its discretion on how to treat enforcement petitions through administrative rule. Nothing in the text of the Motor Vehicle Safety Act or in the legislative history points in that direction. Indeed, the regulations at issue fall comfortably within 15 U.S.C. § 1410a(c), which states that the Secretary "may conduct such investigation or proceeding as he deems appropriate in order to determine whether or not such petition should be granted." It would be a bizarre construction of this provision indeed, that precluded NHTSA from promulgating the substantive and procedural standards that it deemed appropriate for deciding these petitions.

In sum, according to the *Service* decision, "[w]hile it is of course true that under [the Motor Vehicle Safety Act, NHTSA] was not obligated to impose on [it]self these more rigorous substantive and procedural standards, neither was [it] prohibited from doing so, as we have already held, and having done so [it] could not, so long as the Regulations remain[ ] unchanged, proceed without regard to them." 354 U.S. at 388, 77 S.Ct. at 1165. Here, as in *Service,* court relief is available to hold the agency to the standards contained in its own regulation.

existence of such a standard in a particular case.

In concluding this discussion, we emphasize that under the APA, there is no presumption against judicial review of an agency's nonenforcement decision other than the *Chaney* presumption. Congress need not affirmatively signal the availability of judicial review when it enacts a statute concerning grants and denials of petitions for enforcement, like those involved in this case. Rather, as we have discussed, and *Chaney* makes perfectly clear, under subsection (a)(1) of § 701, the presumption works the other way. *Chaney* explicitly recognizes that earlier Supreme Court precedent construing § 701 "clearly separates the exception provided by § (a)(1) from the § (a)(2) exception." 470 U.S. at 830, 105 S.Ct. at 1655. Thus, the fact that nonenforcement decisions are generally committed to agency discretion does *not* make them presumptively unreviewable under the § (a)(1) exception.

The dissent, however, acknowledges it would likely strike off in quite the opposite direction. It would presume nonenforcement decisions immune from judicial review unless Congress demonstrated affirmatively its intent to make these decisions reviewable. The dissent attempts to find some support for this position in the *Chaney* opinion, but in fact its view contradicts that opinion. *Chaney* states that if a statute circumscribes an agency's enforcement discretion with legal standards, then the presumption against judicial review under § 701(a)(2) is rebutted. *Chaney* emphatically does not require *additional* evidence of a congressional intent to provide for judicial review of a nonenforcement decision under the APA where standards exist to govern the petition decisions. Thus, if the "reasonable possibility" standard of § 552.8 had been found in the statute itself, there could be no doubt that judicial review was available under the APA to determine whether NHTSA adhered to that standard. Post-*Chaney* precedents of this court require the same result where the standards are made by the agency itself. *See Padula, supra; California Human Development Corp., supra.*

■ Given *Service* and the multitude of cases following it, we take the position that, in the absence of any congressional intent to preclude review, judicial review is available to hold an agency to procedural and substantive standards contained in its own regulations governing an administrative decision, even when a statute grants the agency "absolute discretion" or something akin to it over that administrative decision. We do not understand *Chaney* as casting doubt on the validity of this long-standing presumption. The fact that nonenforcement decisions have been "traditionally" committed to agency discretion, *Chaney*, 470 U.S. at 832, 105 S.Ct. at 1656, does not negate the presumption that when an agency by regulation circumscribes the discretion granted to it by Congress, judicial review is available to hold the agency to its rules.

This proposition represents the critical difference between the panel and the dissent's argument in this case. We hold that when a statute grants an agency discretion but does not in text or by reasonable inference from legislative history or structure affirmatively preclude judicial review, review may exist under the *Service* principle. If, in that review, an agency's own regulations provide a court with "law to apply," then review may be had on the basis of compliance with that law. It is on such a basis that we find judicial review available in this case.

### III. THE SCOPE OF JUDICIAL REVIEW IN THIS CASE

Because this case involves "informal agency action," *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985), judicial review of NHTSA's denial of appellants' petition under the APA is limited to whether the decision was "arbitrary, capricious, or abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam). Judicial review under § 706(2)(A) determines whether the reasons

for the agency's decision were legally permissible and reasoned ones, and whether there was adequate factual support for the decision. *See ADPSO*, 745 F.2d at 683–84. The reviewing court may not consider new evidence that was not before the agency when it made its decision. *See, e.g., Lorion*, 470 U.S. at 744, 105 S.Ct. at 1607. "When the arbitrary and capricious standard is performing that function of assuring factual support, ... whether the administrator was arbitrary must be determined on the basis of what he had before him and not on the basis of 'some new record made initially in the reviewing court.'" *ADPSO*, 745 F.2d at 683–84 (quoting *Camp*, 411 U.S. at 142, 93 S.Ct. at 1244).

To assure that the necessary factual support for the finding exists, the reviewing court normally must examine the evidence in the existing administrative record, even though it does so with deference to the agency's judgment. "The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred." *Lorion*, 470 U.S. at 744, 105 S.Ct. at 1607.

The Supreme Court has, however, in *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), ruled that in some exceptional circumstances it may be improper for a court to go behind the agency's facial rationale and look into the factual basis for its decision. *Dunlop* involved a decision by the Secretary of Labor not to bring suit to set aside a union election in violation of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). The Court held that while the LMRDA did not entirely prohibit judicial review of the Secretary's decision, it did ban a judicial "challenge to the factual basis for the Secretary's decision." 421 U.S. at 577, 95 S.Ct. at 1862; *see id.* at 573, 95 S.Ct. at 1860. Thus, the Supreme Court stated, "the court's review should be con-

fined to examination of the [Secretary's] 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Id.* at 572–73, 95 S.Ct. at 1860. *Dunlop* limited the APA's "arbitrary or capricious" standard in that case "to determin[ing] whether the Secretary's decision was reached for an impermissible reason or no reason at all," *id.* at 573, 95 S.Ct. at 1861, thereby eliminating the second function of normal APA review, assuring that factual support for the decision existed.

The *Dunlop* Court, in limiting review, said it was basing its decision on the "congressional objectives" underlying the LMRDA. According to the *Dunlop* opinion, "[f]our prior decisions of the Court construing the LMRDA identif[ied] the congressional objectives ... not to permit individuals to block or delay resolution of post-election disputes, but rather 'to settle as quickly as practicable the cloud on incumbents' titles to office;' and 'to protect unions from frivolous litigation and unnecessary interference with their elections.'" 421 U.S. at 568, 573, 95 S.Ct. at 1858, 1860 (internal quotation omitted). The Supreme Court reasoned that allowing court "challenges to the factual basis for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election[s] ... would be defiant of [these] congressional objectives." *Id.* at 573, 95 S.Ct. at 1860.

The Court's specifically articulated concerns are, of course, unique to the LMRDA context, and obviously not applicable in the Motor Vehicle Safety Act context. Some opinions in and outside this circuit have accordingly refused to apply the *Dunlop* exception to normal APA review in circumstances outside the context of union election disputes under the LMRDA.[14] For

---

**14.** We note in passing that even within the LMRDA context, this court has recently held that, consistent with *Dunlop*, the reviewing court may examine the background data in the administrative record in order to determine whether the Labor Secretary's stated reasons

were arbitrary or capricious: "[T]he only way a court can assess the Secretary's actions is to examine his statement of reasons in relation to the evidence before the Secretary." *Doyle v. Brock*, 821 F.2d 778, 783, n. 3 (D.C.Cir.1987). Allowing the reviewing court to examine the

example, in *NRDC v. SEC,* 606 F.2d 1031 (D.C.Cir.1979), we rejected the government's argument, based on *Dunlop,* that judicial review of the SEC's decision not to promulgate rules requiring corporations to disclose their environmental policies was limited to the SEC's statement of reasons for its decision. *Id.* at 1053 n. 31. Instead, we held that the SEC's decision was subject to the "usual rule" that judicial review under the "arbitrary" or "capricious" standard requires the court to examine the existing administrative record to assure that the agency had factual support for its decision. *Id.* Similarly, the Third Circuit, in an opinion authored by Judge Arlin Adams, held that the limited *Dunlop* form of judicial review did not apply to decisions of the Environmental Protection Agency involving the sulphur oxide emissions of certain utility companies. *See Duquesne Light Co. v. EPA,* 522 F.2d 1186, 1193 n. 24 (3d Cir.1975). The court then proceeded to examine the administrative record in the case to determine whether the EPA had the necessary factual support. *See id.* at 1196.

Other opinions, however, again from both this and other circuits, have applied *Dunlop* outside the LMRDA context. In *Exxon Pipeline Co. v. United States,* 725 F.2d 1467 (D.C.Cir.1984), we limited judicial review of decisions by the Federal Energy Regulatory Commission (FERC) to suspend certain pipeline rates to an examination of

the agency's stated reasons for the suspension. In *Ward v. Parole Commission,* 804 F.2d 64, 67 (7th Cir.1986), the Seventh Circuit applied *Dunlop* to a decision by the federal Bureau of Prisons, transferring an inmate from one prison to another. *See also Kitchens v. Department of Treasury,* 535 F.2d 1197 (9th Cir.1976) (applying *Dunlop* to a decision of the Bureau of Alcohol, Tobacco, and Firearms under the Gun Control Act of 1968).

Like the *Dunlop* opinion itself, none of these circuit court opinions set forth a precise standard for determining when the arbitrary or capricious standard performs its usual function of factual support and when, by contrast, judicial review is confined to an examination of the agency's statement of reasons. The dissent reads the caselaw as holding that in order to decide whether the *Dunlop* exception applies, we must look to see whether a congressional statute grants an administrative agency "special" discretion to make a certain decision. Diss. op., *infra* at 822.[15] We must confess our skepticism as to how much, if anything, a "special discretion" formula adds to the inquiry. Certainly we agree the statutory grant of discretion must be "special," in some sense, to invoke *Dunlop's* limited review standard since the simple fact that a statute grants an agency "discretion" cannot mean that judicial re-

---

evidence in the *administrative* record in the LMRDA context is consistent with the view that in *Dunlop* the Supreme Court limited review to the Secretary's stated reasons because it did not want the reviewing court to be considering new evidence in a trial-type proceeding. *See Dunlop,* 421 U.S. at 573, 95 S.Ct. at 1860. But if the reviewing court is permitted to examine the evidence on which the Secretary's statement of reasons depend *in the LMRDA context,* it follows *a fortiori* that the reviewing court may examine the evidence on which the NHTSA Administrator's statement of reasons rely.

15. The phrase "special discretion" was used by this court in the *NRDC v. SEC* opinion. We do not read that opinion, however, as purporting to lay down a "special discretion" test for determining when *Dunlop* applies. The court did not elaborate upon the phrase nor even apply it to the circumstances of its own case. Rather, the court used the phrase as a way of limiting *Dunlop* to the context of LMRDA cases. All we

said was that the Secretary of Labor's "special discretion" under the LMRDA and "the congressional intent evident in the LMRDA to prevent undue judicial intervention into union affairs" presented "unusual circumstances" that explain *Dunlop's* aberration from "the usual rule ... that a reviewing court does examine the record in determining whether an agency's action is arbitrary and capricious." 606 F.2d at 1053 n. 31. Indeed, if *NRDC v. SEC* were the only relevant authority on the scope of *Dunlop's* applicability, we would follow its lead, as circuit precedent, by simply noting that this case does not involve the "unusual circumstances present" in the LMRDA context and then by proceeding immediately to apply the "usual rule" that review under the APA's "arbitrary" or "capricious" standard requires an examination of the agency's record. But because other cases appear to interpret *Dunlop* as applicable outside of the LMRDA, we engage in a more elaborate effort to discern the principle on which the *Dunlop* decision rests.

view is limited to the agency's statement of reasons. If that were the case, the *Dunlop* exception would become the "Jaws" of administrative law, gobbling up the usual APA rule that judicial review, even of informal, discretionary decisions, is based on the administrative record (as long as there is "law to apply"). *See Lorion,* 470 U.S. at 744, 105 S.Ct. at 1607.

But what exactly does it mean for an agency's discretion under a statute to be "special"? The dissent fails to enlighten us in this regard. For ourselves, we think the only pertinent inquiry is whether there is evidence from the structure or history of the law that Congress meant to exempt the agency's decision from the usual modus operandi of judicial review under 5 U.S.C. § 706(2)(A).[16] We do not see that looking for "special" discretion in a statute amounts to anything different than looking for a congressional intent to limit judicial review.[17] That intent, as in *Dunlop,* may, of course, be gleaned from specific congressional objectives that conflict with ordinary review.

■ Nor do we agree with what we understand to be the implication of the dissent's reasoning, that even if the *Chaney* presumption of unreviewability of an agency's nonenforcement decision is rebutted, review of the nonenforcement decision must automatically be limited to the agency's statement of reasons.[18] Neither *Dunlop* nor *Chaney* ever stated so broad a holding, and the caselaw even after *Chaney* supports review of nonenforcement decisions for factual support. For example,

16. In this respect, we agree with the dissent's observation that "Congress remains master of the field of administrative law" and certainly "retains the authority" to legislate that judicial review of certain types of administrative decisions are confined to an examination of the agency's stated reasons and do not extend to an examination of the administrative record. Diss. op. at 823 n. 4. The only question for the court is to determine whether Congress has enacted such legislation. We engage in that inquiry ever mindful of the fact that Congress has enacted a statute, the APA, which lays down rules governing judicial review of administrative decisions generally and which controls unless Congress provides otherwise. Our task is easy when a statute that preempts or modifies the scope of judicial review under the APA states its instructions to the court explicitly. This, of course, is not such a case. Neither was *Dunlop* and that case reminds us that we can infer a congressional intent to limit judicial review, without explicit instructions, at least in some circumstances. But courts should not be too quick to infer a congressional intent to deviate from the provisions of the APA; otherwise, the purpose of providing a general statute to govern administrative action is lost, as the field of administrative law becomes riddled with exceptions based on nothing more than shadows of statutory structure or wisps of legislative history. There should be good reason to believe that Congress wished to deviate from minimal judicial review provisions of 5 U.S.C. § 706(2)(A), if Congress has not stated its intention to do so explicitly.

17. *Exxon Pipeline, supra,* is a case in which the congressional intent to limit review had been made clear. The Supreme Court had deemed it "well-established" that under the relevant statute, a court may not question the factual merits of a particular rate suspension. 725 F.2d at

1470; *see, e.g., Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978). Given this precedent, the only question before this court was "whether a court may review the *reasons* given by FERC to satisfy a suspension or its length." *Id.* (emphasis in original). While we held that a court could look at FERC's reasons for relevance to its statutory duties, we also reiterated that the court could not review the merits of suspension decisions. Thus, "we conclude[d] that a court's review should extend as far as—but no further than—an examination of the reasons to assure they are in some way relevant to FERC's statutory inquiries." *Id.* at 1473. Although *Dunlop* was cited as another instance in which judicial review was limited to the agency's statement of reasons, it is relevant that the decision in *Exxon Pipeline* was based on the peculiar nonreviewable status of FERC rate suspension decisions.

18. The reason we believe the dissent's position necessarily carries this implication is that if the *Dunlop* exception extends to the facts of this case, as the dissent would hold, we have difficulty imagining a circumstance where APA record review would be applicable to an agency's decision to deny a petition for enforcement. If a court may not examine the administrative record for even the minimal level of factual support, *see Lorion,* 785 F.2d at 1042, when the agency's own rules require the agency to compile an administrative record and base its decision on the evidence in that record, and a petition for enforcement is presented by members of the public on an issue of public safety, then this form of APA review will never be available in nonenforcement cases, absent the explicit congressional instruction that we thought unnecessary when judicial review is based on the APA.

in the *Lorion* case, this court reviewed a decision of the Nuclear Regulatory Commission (NRC) denying a petition to commence an enforcement proceeding against an allegedly unsafe nuclear reactor to determine whether the NRC had any factual support for its determination that the petition did not present "a substantial [safety] issue." 785 F.2d at 1042. In our view, *Dunlop* stands for the considerably narrower principle that courts will not conduct their usual review of the evidence in the administrative record underlying the agency's decision if this kind of review would interfere with *identifiable* congressional objectives of the relevant statute.

Here, we can identify no congressional objectives of the Motor Vehicle Safety Act with which the normal level of judicial review would interfere. The basic congressional objective underlying the Motor Vehicle Safety Act is stated simply and clearly in the Act's first section: "Congress hereby declares that the purpose of this chapter is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." Pub.L. No. 89–563, § 1, 80 Stat. 718 (codified as 15 U.S.C. § 1381). To the extent that judicial review helps to assure that factual support exists for NHTSA decisions denying enforcement petitions, it helps to reduce the threat of traffic accidents, and aids, not hinders, the basic congressional purpose of the statute.

Moreover, the Motor Vehicle Safety Act expressly contemplates extensive citizen involvement in enforcement of the Act by providing for citizen petitions for enforcement of safety standards, by expressly authorizing public hearings on allegations of safety-related defects, and by requiring the agency to publish a statement of reasons for denying a petition. This statutory scheme starkly contrasts with the one involved in *Dunlop*. The LMRDA did not itself require any statement of reasons for the Secretary's decision to set aside elections based on union misconduct, and it certainly did not contain any provision authorizing the Secretary of Labor to conduct a public hearing on allegations of misconduct involving union elections, at which "any interested person" could participate and introduce evidence. Such provisions would have been totally inconsistent with the congressional objective "not to permit individuals to block or delay resolution of post-election disputes." The explicit provisions for citizen participation contained in the motor safety enforcement provisions of 15 U.S.C. § 1410a demonstrate that there were no *Dunlop*-type congressional objectives in the Act with which we are concerned.

Also, the nonenforcement decision under review here differs from that involved in *Dunlop* in a way that strongly suggests the inapplicability of that precedent to this case. A decision concerning allegations of misconduct in a union election requires a judgment about the actions and intentions of particular individuals. It would be virtually impossible for a reviewing court to revisit those kinds of factual decisions without conducting an independent "trial-type" inquiry or impermissibly substituting its judgment for the agency. The *Dunlop* Court was at great pains to avoid this kind of "trial-type" inquiry. The Court twice referred to "[t]he full trappings" of adversary trial-type hearings as the kind of judicial review which would interfere with the congressional objectives underlying the LMRDA. 421 U.S. at 573, 577, 95 S.Ct. at 1860, 1862.

By contrast, the administrative decision in this case concerns the possibility that certain kinds of cars are defective and unsafe. This possibility, in turn, depends on an evaluation of "technical" evidence about the cars which the agency's own regulations prescribe. *See* 49 C.F.R. § 552.6. Of course, the reviewing court may not substitute its judgment for the agency's but it certainly is possible for the court to review the administrative decision for factual support without an impermissible substitution of judgment, in the same way we review agency factual determinations under § 706(2)(A) thousands of times every year. *Cf. Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (holding that the arbitrary and capricious standard performs its

usual role of assuring factual support in a case involving a NHTSA decision to rescind a motor vehicle safety standard).

Thus, the concerns about identifiable congressional objectives that led the *Dunlop* court to limit judicial review in that case simply are not present here. There is no reason to bypass the normal function of the "arbitrary" or "capricious" standard of review, *i.e.*, to assure that factual support for the agency's decision exists. As we noted above, the *Lorion* case, remarkably similar in context to this case, stands as a firm precedent for factual review under § 706(2)(A).

*Lorion* involved an NRC decision denying a citizen petition for enforcement. Under its own rules, the NRC is required to grant the petition if the evidence presents a "substantial ... safety issue" concerning the design of a nuclear reactor. *See Lorion*, 470 U.S. at 732, 105 S.Ct. at 1601. *Lorion*, 785 F.2d at 1042. This administrative standard corresponds to the "reasonable possibility" standard in NHTSA's regulations. Thus, in both cases, the agency's decision to grant or deny the citizen petition for enforcement turns on whether the evidence in the administrative record demonstrates a significant threat to public safety.

The *Lorion* case produced opinions from the Supreme Court and our own circuit. The question presented to the Supreme Court on writ of certiorari was whether jurisdiction to review the NRC decision resided exclusively in the court of appeals, or in the district court as well. But, in order to decide this question, the Supreme Court had to consider the nature of the judicial review that it expected would take place.[19] In so doing, the Court made very clear that judicial review would be based on the existing administrative record:

> As the actions of the Commission in compiling a 547–page record in this case demonstrate, agencies typically compile records in the course of informal agency

action. The APA specifically contemplates judicial review on the basis of the administrative record compiled in the course of informal agency action in which a hearing has not occurred.

470 U.S. at 744, 105 S.Ct. at 1607.

And indeed this court on remand performed precisely the kind of judicial review expected by the Supreme Court opinion. Our review was appropriately deferential, but we examined the administrative record, referred to by the Supreme Court, to determine whether it supported the NRC's determination that the citizen's petition presented no "substantial safety issue." 785 F.2d at 1043. Together, the Supreme Court opinion in *Lorion* and the subsequent *Lorion* decision in our own circuit, establish a strong precedent in favor of normal APA record review in this case.

Both *Lorion* and this case involve public safety issues of great import. One concerns the design of a nuclear reactor; the other, the design of an automotive transmission. But the basic factual issue up for review is the same: does the product's design in fact contain a defect that may cause widespread injuries, and perhaps fatalities? Indeed, the public safety issues in both cases were deemed sufficiently important by both agencies as to require in their *own* regulations that safety be the sole consideration in deciding enforcement petitions.[20] While this court cannot, and should not, second-guess the agency's safety determinations, this court can and should assure that the agency has *some* factual support for those safety determinations. Making sure that the agency's stated reason for denying an enforcement petition is in truth the lack of a "substantial safety issue" guarantees that the responsible administrative agency has given at least a minimum amount of consideration to the citizens whose safety Congress has entrusted to the agency. In contrast to *Dunlop*, confining judicial review to the agency's statement of reasons would em-

---

**19.** In *Lorion,* the Supreme Court specifically left unaddressed the issue of reviewability under the *Chaney* doctrine. *See* 470 U.S. at 735 n. 8, 105 S.Ct. at 1602 n. 8.

**20.** The two cases present none of the problems associated with reviewing an agency's management of its enforcement priorities.

phatically not serve basic congressional objectives in this area of the law.

Our holding then is this: When Congress grants citizens the right to petition administrative agencies for enforcement on an issue of public safety, and the relevant substantive statute sends out no identifiable signals on the availability or scope of judicial review of an agency's denial of that petition, but the agency has bound itself by a legal rule to grant the petition unless it makes a finding of "no reasonable possibility" of a safety defect, then a petitioner is entitled under the APA to judicial review of a decision denying the petition to assure that the agency had some factual support for its "no reasonable possibility" finding. In such circumstances, the arbitrary or capricious standard of review in § 706 of the APA functions as usual, and is not limited to examining merely the stated reasons for the agency's decision. Therefore, following the *Lorion* precedent in this circuit, we hold that NHTSA's determination that no "reasonable possibility" of a safety-related defect exists in this case is subject to judicial review on the basis of the evidence that the Administrator had before her when she made her decision.

### CONCLUSION

The Motor Vehicle Safety Act does not "affirmatively preclude" judicial review of NHTSA decisions denying citizen petitions for enforcement against alleged automotive safety defects. NHTSA is bound by its own regulation requiring that it grant a citizen petition if there is a "reasonable possibility" that a safety-related defect exists. This "reasonable possibility" standard provides the court with a judicially manageable standard for reviewing NHTSA petition decisions, thereby rebutting the presumption against judicial review of nonenforcement decisions, established in *Chaney*.

The scope of judicial review in this case falls under the "arbitrary" or "capricious" standard of 5 U.S.C. § 706(2)(A), which in this case requires both that the agency's stated reason for denying a citizen petition conform to the rule set forth in its own regulations and that the agency have a sufficient factual basis for its decision. The reviewing court should be appropriately deferential, as mandated by our *Lorion* opinion. Nevertheless, the reviewing court must examine the record on which the agency relied. Because the District Court did not examine the administrative record in this case, we reverse its decision and remand for an appropriate review.

*Reversed and remanded.*

BORK, Circuit Judge, dissenting:

In 1977, the National Highway Traffic Safety Administration ("NHTSA"), an arm of the Department of Transportation, opened a lengthy investigation of possible safety defects in certain Ford Motor Company automobiles and trucks. The Secretary of Transportation settled the matter with Ford in 1980 and NHTSA closed its investigation in 1981. This court upheld the settlement agreement. *Center for Auto Safety v. Lewis*, 685 F.2d 656 (D.C. Cir.1982). A petition to reopen the investigation was denied in 1981 and a petition to reconsider the denial, submitted by the Center for Auto Safety, was denied in 1982. In 1985, some of the same parties that challenged the 1980 settlement and petitioned for reconsideration in 1982 again petitioned NHTSA to open a new investigation on the ground that accidents involving these same vehicles continued to occur. The agency obtained additional comprehensive information from Ford and the other three major American automobile manufacturers. The Administrator of NHTSA then denied the petition and set out her reasons.

Appellants brought suit in the district court asking that the Administrator's denial of the petition be set aside and that the Secretary and the Administrator be ordered to initiate the investigation sought. The district court granted defendants' motion for summary judgment on alternative grounds: that the denial of the petition was not judicially reviewable or that review must be limited to the agency's statement of reasons, which were upheld as a "reasoned analysis" and not contrary to law.

A majority of this court reverses the judgment below on both grounds, holding that judicial review is available and that the district court should review the Administrator's decision not on her statement of reasons but on the underlying facts. I would affirm. I think there are strong indications that Congress intended to preclude review of denials of citizen petitions, to avoid imposing the significant burden on the agency of having to litigate such claims whenever they might arise. The point is arguable, however, and I do not rest on it because, even assuming review is not precluded, I think Congress intended to limit the scope of judicial review to an examination of the statement of reasons for denying the petition.

### I.

It seems to me likely that no judicial review may be had of the Administrator's decision not to grant appellant's petition for an investigation. Since the point may be important if this case receives further review or a similar case arises in the future, I will set out the argument.

Congress intended that there be no review and expressed its intent to preclude review in the language, structure, and legislative history of the Act.[1] Thus the NHTSA regulations said to limit the Secretary's discretion cannot provide review. The decision not to grant a petition is, moreover, an enforcement decision of the sort that is presumptively not reviewable.

### A.

The Administrative Procedure Act declares that a person "adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," 5 U.S.C. § 702 (1982), unless "statutes preclude judicial review" or "agency action is committed to agency discretion by law." *Id.* § 701(a)(1) & (2). This language raises a presumption of reviewability that is defeated if a court discerns either that Congress intended to preclude review or that Congress provided no "law to apply" in assessing the legality of the agency action. *See, e.g., Block v. Community Nutrition Inst.,* 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984); *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Under the first branch of the inquiry—whether the statute precludes judicial review—the Supreme Court has said that in order to defeat the APA's presumption of reviewability, Congress' intent to foreclose review must be shown by "clear and convincing evidence," *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), or at least must be "'fairly discernible in the statutory scheme.'" *Community Nutrition Inst.,* 467 U.S. at 351, 104 S.Ct. at 2456 (quoting *Data Processing Serv. v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970)). Congress need not explicitly state that review is precluded; instead, the evidence of Congress' intent can be found by examining the language, structure, and background of the statute itself. *See, e.g., Community Nutrition Inst.; Southern Ry. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); *Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); *see also Doe v. Casey,* 796 F.2d 1508, 1514–15 (D.C.Cir.1986), *cert. granted sub nom. Webster v. Doe,* —— U.S. ——, 107 S.Ct. 3182, 96 L.Ed.2d 671 (1987).

Here I think there are strong indications of Congress' intent to preclude review. The National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381–1431 (1982), provides the Secretary and, through her, the Administrator, with complete and untrammeled authority to decide whether or not to grant a petition seeking an investigation. Section 1410a(a) states that "[a]ny interested person may file with the Secretary a petition *requesting* [her]" to commence an investigation (emphasis add-

---

1. The statute itself refers not to the Administrator but to the Secretary of Transportation, who is one of the appellees in this case. *See, e.g.,* 15 U.S.C. §§ 1410a, 1412 (1982). The Secretary is authorized to carry out the Act through the Administrator, as she did here. *See* 49 U.S.C. § 105(d) (1982).

ed). Section 1410a(c) states that "[t]he Secretary *may* hold a public hearing or *may conduct such investigation* or proceeding *as [s]he deems appropriate* in order to determine whether or not such petition should be granted" (emphasis added). Absolutely no criterion or standard is specified to control or even to influence the Secretary's determination. Section 1410a(d) states that within 120 days, "the Secretary shall either grant or deny the petition." No statutory language could be written that more completely leaves the decision whether to investigate to the Secretary. And, since the form and scope of any preliminary inquiry concerning the admissibility of a defect investigation is left to the Secretary, she has complete authority to determine what evidence to consider, whether to create an administrative record, and, if so, what sort. Her sole obligation is to "publish in the Federal Register [her] reasons for such denial." 15 U.S.C. § 1410a(d) (1982). If this were all, we might be obliged to conclude that Congress merely conferred a discretion the Secretary could remove by regulation, providing "law to apply," and thus herself providing judicial review. The clear language of section 1410 is by no means all, however.

The entire structure of the Act also suggests Congress' intent to foreclose review. Judicial review was explicitly provided for stages in the regulatory process both before and after the petition stage. Thus, when the Secretary initially establishes a motor vehicle safety standard pursuant to 15 U.S.C. § 1392 (1982), judicial review of that order is provided by section 1394. Similarly, when the Secretary wishes to enforce a compliance order directed to a motor vehicle manufacturer, she must apply to a court pursuant to section 1399(a). Significantly, no judicial review is provided for the Secretary's decision to grant or deny citizen petitions to establish a standard or issue a compliance order. Moreover, a variety of judicial remedies were provided to enforce the Act's provisions, including the grant of injunctive relief, *id.* § 1399(a), the creation of private civil actions, *id.* §§ 1400(b) & 1415(a), and the imposition of civil penalties, *id.* § 1398(a),

but none whatever was created to compel the Secretary to grant specific citizen petitions. The structure of the Act thus shows that Congress carefully provided judicial review in specified circumstances, but deliberately withheld review in the circumstances of this case. Congress made available an array of judicial remedies for various purposes, but none for the purpose asserted in this case, and Congress established enforcement processes by explicitly differentiating between mandatory actions and completely discretionary actions. This case presents us with a completely discretionary action that is not made subject to judicial review. This statutory structure is weighty evidence of Congress' intent to preclude review here.

The Supreme Court's approach to preclusion in *Community Nutrition Institute* emphatically demonstrates the propriety of inferring Congress' intent to preclude review from the structure of the governing statute. There the Court considered whether Congress intended consumers to be able to challenge certain milk-market orders. Although the statutory language did not affirmatively foreclose review, the Court decided, unanimously, that no review was permitted. "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." 467 U.S. at 345, 104 S.Ct. at 2453–54. The Court based its holding on its detailed analysis of the structure of administrative and judicial remedies that were both provided and omitted in the statutes governing the marketing of agricultural products. *Id.* at 345–48, 104 S.Ct. at 2453–55. As we have seen, the same analysis indicates that Congress intended to preclude review in this case.

The legislative history of the Act also reveals evidence of Congress' intent to preclude review. The original bill would have allowed citizen petitions and provided that when the Secretary denied a citizen petition, the citizen would be entitled to obtain full review of that decision in federal dis-

trict court. *See* H.R. 5529, 93d Cong., 1st Sess. § 7 (1973). Although citizen petitions were kept in the statute that was enacted by Congress, this provision for judicial review of the Secretary's denial of those petitions was deleted in committee. One of the original sponsors objected to the deletion, and stated that he would offer an amendment to assure the availability of these "citizens' suits." *See* 120 Cong. Rec. 27,-807–08 (1974) (Rep. Eckhardt). He never did so, however, and the bill as enacted did not make the denial of these petitions subject to review. In addition, a letter from the Secretary to the Chairman of the House Committee on Interstate and Foreign Commerce—the committee that deleted the review provision—presented the Department's views on the bill after it had emerged from the committee. The Secretary stated that he was "very pleased" that the committee had adopted the "critical" change of amending the bill "to delete provisions that would have authorized use of the courts to compel, without consideration of such factors as available technology and resources, a reordering of the priorities we have established to carry out the purposes of the Act." This letter was included in the committee report that was available to the legislators who voted on the bill. *See* H.R.Rep. No. 1191, 93d Cong., 2d Sess. 34, *reprinted in* 1974 U.S. Code Cong. & Admin. News 6046, 6079.

The majority argues that the legislative history, in this particular, shows Congress' intent to leave citizen petitions subject to the usual forms of judicial review under the APA. But the argument is deficient in two respects. First, it fails to take account of the Secretary's interpretation of what Congress intended when it deleted the provision for citizen suits, which supports complete preclusion of review, and which was itself incorporated by Congress into the legislative history of the Act. Second, as the majority concedes, the strongest piece of evidence to the contrary is one passage in the Conference Report, which states that the conferees "decided to take no position on whether or not pre-enforcement judicial review is available under the conference substitute. The conferees decided to leave

that question to the courts." H.R. Conf. Rep. No. 1452, 93d Cong., 2d Sess. 32, *reprinted in* 1974 U.S. Code Cong. & Admin. News 6084, 6095. Yet the majority takes this passage completely out of context, and mistakes its import. Here the conferees were discussing 15 U.S.C. § 1415 (1982), which concerns manufacturer suits to prevent enforcement of a defect order against it, not citizen petitions under section 1410a, which are discussed in a completely different part of the Conference Report. *Compare* 1974 U.S. Code Cong. & Admin. News at 6093–96 *with id.* at 6106. The Report makes it absolutely clear that the "pre-enforcement judicial review" discussed here refers only to manufacturer attempts to seek review "of the Secretary's determination of defect or failure to comply [before] the enforcement stage of the administrative process." *Id.* at 6093.

Each of these increments in the legislative history is simply one element in the complete picture, but when they all are added to the very strong language and structure of the Act, I would conclude that there is "clear and convincing evidence" that Congress intended to preclude review of the Secretary's denial of a petition submitted under section 1410.

### B.

The majority does not accept the view I have just set forth, and holds that Congress did not preclude judicial review, but merely failed to provide "law to apply" to assess the legality of the agency action. The majority in this case holds that when Congress fails to provide "law to apply" to an agency action, the agency may render the action reviewable by adopting rules that provide judicially manageable standards for assessing the legality of the agency action, thus settling an issue that the Supreme Court had left open. *See Chaney,* 470 U.S. at 836, 105 S.Ct. at 1658; *see also California Human Dev. Corp. v. Brock,* 762 F.2d 1044, 1048 n. 28 (D.C.Cir. 1985) (agency rules may provide the requisite "law to apply"); *id.* at 1053 (Scalia, J., concurring) (same). The denial of the petition in this case is thus found to be subject

to judicial review based on the "reasonable possibility" standard for granting or denying petitions that NHTSA has set out in its own rules. 49 C.F.R. § 552.8 (1986).

It is settled law, however, that "an agency cannot create through its implementing regulations a right of review withheld by the underlying statute." *Harrison v. Bowen*, 815 F.2d 1505, 1517 (D.C.Cir.1987); *see also id.* at 1517 n. 27 (collecting cases). If Congress goes further than merely omitting any "law to apply" to the agency action, and affirmatively indicates its intent to preclude judicial review altogether of certain actions, then the content of the agency's own rules are unavailing in face of congressional intent. That is the situation before us. There is ample evidence that the Act withholds any right to obtain review of the Secretary's decision to deny the petition at issue here. The agency's own regulations cannot therefore provide review, for if they did they would be invalid: they would be "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C) (1982).[2] Thus, we have no authority to take review under the regulations upon which the majority relies.

### C.

Even if the evidence in the Act were thought to be too weak to defeat the APA's normal presumption of reviewability, we should not find that we are authorized to undertake judicial review in this case. The Secretary's denial of a citizen petition is a "refusal to take requested enforcement action," and the Supreme Court has said flatly that "in that situation we think the pre-

sumption is that judicial review is not available." *Chaney*, 470 U.S. at 831, 105 S.Ct. at 1656. The Court found that these refusals to take action are generally unsuitable for judicial review for several reasons: the agency must balance many variables in ordering its priorities; a refusal to act is not an exercise of the state's coercive power over individuals that would infringe on areas normally requiring the courts' protection; and the refusal to institute proceedings is very much like an exercise of prosecutorial discretion, which has been traditionally understood to be unreviewable. *Id.* at 831–32, 105 S.Ct. at 1655–56. Indeed, after recounting these reasons, the Court stated that the normal presumption of reviewability is not only inapplicable in these situations, but it must be reversed: "an agency's decision not to take enforcement action should be presumed immune from judicial review." *Id.* at 832, 105 S.Ct. at 1656.

The majority claims that *Chaney* cannot be read to suggest, as a general matter, that under section 701(a) a presumption of unreviewability applies to an agency's decision not to take enforcement action. The majority points out that *Chaney* was decided under section 701(a)(2) rather than section 701(a)(1), and rightly notes the Supreme Court's statement in *Chaney* that its prior case law "clearly separates the exception provided by § (a)(1) from the § (a)(2) exception." 470 U.S. at 830, 105 S.Ct. at 1655. The Court said this, however, simply in order to explain how it parsed the language of section 701(a) as a whole. It did

---

**2.** The majority places a great deal of emphasis on the proposition that the Supreme Court set down in *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), that judicial oversight exists to require an agency to follow its own rules. But I have absolutely no dispute with this proposition. The difficulty, instead, is that there is a tension between the above proposition and this court's holding in *Harrison,* 815 F.2d at 1517, that an agency's own rules cannot confer judicial review over an agency decision when Congress has precluded review of that decision. The only way to reconcile *Service* and *Harrison* is to recognize that Congress may very well empower an agency to promulgate certain rules and implement them without necessarily

granting the courts the power to review the everyday operation of those rules; agencies and the courts do not travel in tandem if Congress did not intend that they do so. The majority, however, takes a different point from *Service:* that congressional intent to preclude review cannot be inferred simply from the fact that Congress confers discretion upon an agency. I agree with this point, but I do think that such discretion is at least one piece of evidence that forms part of the more complete picture in discerning congressional intent, which comprises all the justifiable inferences that a court is obliged to draw from the language, structure, background, and legislative history of the agency's governing statute.

not even begin to suggest that the two sections have nothing in common.

One of the things that the two sections have in common is the general presumption *under the APA*, as at the common law, that agency action is made subject to judicial review. *See, e.g., Abbott Laboratories*, 387 U.S. at 140–41, 87 S.Ct. at 1510–11. Nobody has ever thought that this presumption is particular to specific subparts of the APA and not to others; it is "a *general* presumption that all agency decisions are reviewable *under the APA*." *Chaney*, 470 U.S. at 826, 105 S.Ct. at 1653 (emphasis added). Thus, although the Court explicitly held in *Chaney* that "an agency's decision not to take enforcement action should be presumed immune from judicial review *under § 701(a)(2)*," *id.* at 832, 105 S.Ct. at 1656 (emphasis added), which was after all the only part of section 701(a) under direct consideration in the case, there is simply no reason why the same position would not obtain under section 701(a)(1). Indeed, the Court spoke generally: in addition to the several factors the Court enumerated that I have already mentioned, which all bear on reviewability of agency action in a general manner, it said that an agency's decision not to take enforcement action "has traditionally been 'committed to agency discretion,' and we believe that the Congress enacting the APA did not intend to alter that tradition. *Cf.* 5 Davis § 28:5 (APA did not significantly alter the 'common law' of judicial review

of agency action)." *Chaney*, 470 U.S. at 832, 105 S.Ct. at 1656. In thus referring to "tradition," "the common law," and "the APA" as a whole, the Court did not indicate that its approach to reviewing an agency's decision not to take enforcement action would be properly confined only to one particular subpart of the APA.

Without the normal presumption of reviewability in this case, indeed with the presumption of nonreviewability of refusals to take enforcement actions, the arguments for judicial review are greatly weakened.[3] When the other factors discussed are considered as well, the arguments for judicial review virtually disappear.

## II.

The majority also reverses the district court's conclusion that if review is had in this case, it should be limited to consideration of the Secretary's statement of reasons for denying the petition and should not extend to the underlying administrative record. I agree with the district court that, if review is available, Congress intended to define the reviewable "record" in this case as the statement of reasons for denying the petition. Even if I thought the majority to be clearly correct in assuming the power of review here, I think we would be obliged to confine our review to the statement of reasons. In the typical case under the Administrative Procedure Act the

---

**3.** The Court in *Chaney* did find that its presumption of unreviewability "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." 470 U.S. at 832–33, 105 S.Ct. at 1656–57. In this case, however, Congress provided no such guidelines. Though the majority finds "law to apply" in the agency's rule that petitions are denied when there is not a "reasonable possibility" that an investigation will establish alleged safety defects, *see* 49 C.F.R. § 552.8 (1986), the *Chaney* Court refused to find that an agency's action was made reviewable by its own rule when that rule conflicted with another rule which indicated that the action was not understood to be reviewable. 470 U.S. at 836, 105 S.Ct. at 1658. Based on that holding, the issue here is even less difficult, since here the rule relied on by the majority conflicts with Congress' intent to preclude review as set forth in the governing statute.

In addition, it is not obvious that the rule cited by the majority is intended to provide judicially manageable standards that would allow review. The majority finds the "reasonable possibility" standard to be a "judicially manageable" one, and so I suppose it is, but that is not quite the point. The question is not whether we can manage it, but whether we should. That in turn would depend upon the intention underlying the regulation. Although the rule is said in one place to "limit[ ] the discretion of the Administrator," 40 Fed.Reg. 42,013 (1975), much of its language seems purely descriptive. Most of the language is in the present tense and conspicuously lacks any mandatory word such as "shall" or "will." It reads much more like a discussion of how the agency works, intended for the information of outsiders, than it does like internal law. It is at least doubtful that it cabins the Administrator's discretion sufficiently to give the courts "law to apply."

court's review extends to the full administrative record. *See* 5 U.S.C. § 706 (1982). In the typical case, however, the agency's governing statute establishes the basis for judicial review. Indeed, the fact that in this case there is a question whether Congress provided for review at all makes it all the more likely that Congress did not intend a broad scope of review in any event. In the typical case, also, the court is not reviewing an agency's refusal to initiate an investigation, certainly not a renewed investigation of a subject the agency has previously extensively investigated. This case, far from being typical of this court's regular fare, is instead like *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).

In *Dunlop*, the Supreme Court allowed review of an agency's decision not to initiate an enforcement proceeding against a particular party, holding that the Secretary of Labor's decision not to bring suit to set aside a union election was reviewable under the APA. But because "the statute relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect, clearly the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit." 421 U.S. at 571, 95 S.Ct. at 1860. The Court then found that "[t]he necessity that the reviewing court refrain from substitution of its judgment for that of the Secretary thus helps define the permissible scope of review. Except in what must be the rare case, the court's review should be confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Id.* at 572–73, 95 S.Ct. at 1860. The Court was emphatic on this point: "Thus, review may not extend to cognizance ... of a complaining member's challenges to the factual bases for the Secretary's conclusion.... 'If ... the court concludes ... there is a rational and defensible basis [stated in the reasons statement] for [the Secretary's] determination, then that should be an end of this matter, for it is not the function of the court to determine whether or not the case should be brought or what its outcome would be.'" *Id.* at 573, 95 S.Ct. at 1860 (quoting *DeVito v. Shultz*, 72 L.R.R.M. (BNA) 2682, 2683 (D.D.C.1969)).

With one exception, the situation here is completely parallel to that in *Dunlop*. The exception is that the governing statute here provides NHTSA with even more discretion than the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") gave the Secretary of Labor in *Dunlop*. The LMRDA provided that a union member could file with the Secretary a complaint concerning a statutory violation, and "[t]he Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall ... bring a civil action against the labor organization." 29 U.S.C. § 482(b). Thus, the statute provided the court with law to apply and the Administrative Procedure Act allowed the courts to review the Secretary's decision that there was not probable cause to believe that violations had occurred to determine if it was arbitrary and capricious. Here, however, the Act does not confine the Secretary of Transportation's authority at all.

The majority gives three reasons for its belief that *Dunlop* does not control this case. First, the precedential force of *Dunlop* is claimed to be limited to the context of the specific labor statute at issue in that case. This court's decision in *Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031 (D.C.Cir.1979), is cited as support for that view. Second, although several other courts have applied *Dunlop* beyond that narrow context, the majority believes that none of them has provided a rationale that would apply in this case. Third, the majority believes that the Supreme Court's decision in *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), and this court's decision on remand, *see Lorion v. United States Nuclear Regulatory Comm'n*, 785 F.2d 1038 (D.C.Cir.1986), compel us to review the Secretary's decision on a wider scope

than that prescribed in *Dunlop*. I think none of these attempts to distinguish *Dunlop* succeeds.

### A.

The reasoning of *Dunlop* was clearly not confined to the context of the LMRDA or dictated by the peculiar exigencies of union elections. The Court never once indicated that its holding was limited to cases involving union elections; instead, it offered general principles about when it is appropriate to confine judicial review to the agency's statement of reasons, and those principles obviously apply to much more than that particular statute. Neither did this court in *Natural Resources Defense Council, Inc. v. SEC*, distinguish *Dunlop* on that ground. Instead, we stated that the principles the Court relied on in *Dunlop* were not present in the context of the securities laws at issue in that case. The central principles from *Dunlop*, as we stated them, were the "special discretion" that the labor statutes afforded the agency, and "the congressional intent evident in [those statutes] to prevent undue judicial intervention into union affairs." *Id.* at 1053 n. 31.

Those same principles are present in the Act that governs NHTSA. Here the statute affords "special discretion" to the agency; it does not in any way confine the agency's discretion whether to investigate the facts alleged in the petition and what information to consider in assessing those facts. The Act does not provide for judicial review and does not offer a basis on which judicial review can be undertaken without turning away from the statute itself to the agency's own rules. Finally, to the extent that the holding in *Dunlop* may have reflected a special concern to prevent courts from unduly intervening in union affairs, we also have such special concerns here. As I have indicated, this is not the agency's first investigation of the problem. It has already made a thorough investigation and entered into a settlement that has been reviewed and upheld by this court. *See Center for Auto Safety v. Lewis*. What has been brought here is a petition to reopen the investigation. Subsequent petitions, alleging that there are new facts, can be brought by anyone at any time. If the Administrator seeks additional information, as she did with respect to this petition, an administrative record will be compiled which would have to be understood in the light of prior administrative records on the same subject. Full judicial examination of the administrative record every time such petitions are brought was clearly not intended in a statute that left the consideration of those petitions entirely within the discretion of the agency.

### B.

The majority concedes that a number of cases have applied the rationale of *Dunlop* beyond the narrow context of the labor statutes at issue there. *See* maj. op. at 811. There are still other cases. *See, e.g., Illinois v. Nuclear Regulatory Comm'n*, 591 F.2d at 12 (7th Cir.1979) (applying *Dunlop* in the context of the Atomic Energy Act of 1954); *Levin v. Connecticut Blue Cross, Inc.*, 487 F.Supp. 385 (N.D.Ill. 1980) (applying *Dunlop* in the context of the Federal Employee Health Benefits Act); *cf. Singleton v. Cory*, 465 F.Supp. 14 (S.D.N.Y.1978) (applying *Dunlop* in a different context under the labor laws). There are also cases that have rejected *Dunlop's* rationale; in addition to *Duquesne Light Co. v. EPA*, 522 F.2d 1186, 1193 n. 24 (3d Cir.1975), cited by the majority, there is also an extensive criticism of that rationale in *Thompson v. Department of the Treasury*, 533 F.Supp. 90, 92–97 (D.Utah 1981), where the district court refused to apply *Dunlop* in the context of the Gun Control Act of 1968.

The narrow scope of review prescribed in *Dunlop* has apparently caused some judges discomfort. However that may be, we are bound by *Dunlop*, which makes the scope of review turn on the congressional intent underlying the governing statute. Whether or not the agency's rule provides the "law to apply," the statute expresses Congress' intent with respect to the degree

of judicial intervention in the agency's enforcement discretion.[4]

The Seventh Circuit's opinion in *Ward v. United States Parole Comm'n*, 804 F.2d 64 (7th Cir.1986), for example, offers no support for the majority's reading of *Dunlop*. In *Ward*, Judge Easterbrook refused to dismiss *Dunlop* simply as a labor case, but stated its rule as follows:

> [T]he Court concluded that if the Secretary's decision not to file a suit against a union is reviewable, the review must be made on the basis of the Secretary's statement of reasons. *The narrow scope of review was compelled by the Secretary's broad discretion and the absence of any statutory requirement to create an administrative record. Here, too, the cabinet officer has great discretion, and there is no statutory requirement to create a record.*

*Id.* at 67 (emphasis added).

What was true of *Dunlop* and *Ward* is true here. This statute gives the agency broad discretion about whether to conduct investigations and what information to consider. The statute also does not require the agency to create an administrative record. In such a case, as in *Dunlop*, judicial review should be confined to review of the Secretary's statement of reasons except, as *Dunlop* stated, "in what must be the rare case." 421 U.S. at 572, 95 S.Ct. at 1860. It does not change matters that the agency has created a record in accordance with its own rules. The Secretary of Labor had created a record in *Dunlop*, as is shown by his detailed statement of reasons based upon the findings of an extensive investigation. If a fuller record had been regarded as desirable, the Court, or the district court upon remand, could have required the agency to create it. Yet the Court held that review was confined to the agency's statement of reasons unless *the statute itself* has limited the agency's discretion and required it to create an administrative record.[5]

The majority notes that the precise boundaries of the Supreme Court's holding in *Dunlop* have not been fleshed out. Nor have I attempted to flesh them out here. I have simply attempted to apply *Dunlop's* approach to the facts before us, and I have sought guidance in doing so from the lower courts' reading of that case.[6] Yet the majority rejects the interpretations of *Dunlop*

**4.** The majority expresses the fear that the *Dunlop* exception could become "the 'Jaws' of administrative law, gobbling up the usual APA rule that judicial review, even of informal, discretionary decisions, is based on the administrative record." Maj. op. at 812. This concern is unfounded. Congress has stated that in the typical case under the APA judicial review is to be had on the record, *see* 5 U.S.C. § 706 (1982), just as in the typical case agency action is presumed to be subject to judicial review. *Dunlop* merely indicates that Congress retains the authority to express its intent, in the agency's governing statute, that specific agency actions are to be reviewed on something less than the record as a whole, just as Congress retains the authority to indicate that other specific agency actions are not reviewable at all. Thus *Dunlop* simply recognizes, as we must, that Congress remains master of the field of administrative law, and is completely free, subject only to the broad limits imposed by the Constitution, to establish the substantive and procedural constraints under which an agency is to administer the law in its particular field, and which the courts are bound to apply on review.

**5.** Judge Easterbrook's reading of *Dunlop* turns on whether there is "any *statutory* requirement to create an administrative record," 804 F.2d at 67 (emphasis added), rather than whether there is any "*legal* duty" to create a record. This

difference is crucial because it highlights our obligation to determine, according to *Dunlop*, whether in a particular governing statute Congress intended to confine judicial review to the agency's statement of reasons for its action rather than providing for the usual, more extensive review based on the entire administrative record. In *Dunlop*, for example, the Court could have required the Secretary of Labor to develop a fuller record rather than simply providing a statement of reasons; then the agency would have been under a legal duty to do so. Indeed, the Court could also have read 5 U.S.C. § 706 (1982), which provides for judicial review in the typical case to be undertaken on "the whole record or those parts of it cited by a party" as itself imposing a legal duty on the agency to develop a fuller record that would facilitate review. But the Court did not read this language so expansively, or impose such a requirement itself; instead it based its conclusions about the proper scope of review simply on the language and structure that Congress set out in the governing statute that was at issue.

**6.** I therefore disavow each of the grander and erroneous views that the majority attributes to me. I do not say that a court will be confined to reviewing agency action on a statement of reasons whenever the statute confers a "special" discretion on the agency. Maj. op., *supra* at

rendered by this court in *Natural Resources Defense Council, Inc. v. SEC*, and by the Seventh Circuit in *Ward*, both of which have been sketched out previously. Instead, the majority offers its own view of the principle central to *Dunlop*: "*Dunlop* stands for the considerably narrower principle that courts will not conduct their usual review of the evidence in the administrative record underlying the agency's decision if this kind of review would interfere with *identifiable* congressional objectives of the relevant statute." Maj. op., *supra* at 813 (emphasis in original). I have two objections to this statement. First, it is not clear to me why the majority sees its "interference-with-identifiable-congressional objectives" principle as the entire holding of *Dunlop* rather than simply as one factor, certainly quite an important factor, that bears on Congress' intent as it was embodied in the agency's governing statute.

Second, I find it difficult to discern what is meant or achieved by putting so much stress on whether the courts can label a congressional objective as "identifiable." The majority thus finds support for its holding in the fact that, unlike the statute in *Dunlop*, which sought to restrict outside interference with the Secretary of Labor's decisions under the statute, the Act here "contemplates extensive citizen involvement in enforcement of the Act by providing for citizen petitions for enforcement of safety standards." Maj. op., *supra* at 813. From this fact the majority infers that Congress was less concerned about the possible intrusiveness of judicial review of the kinds of decisions at issue in this case, so that

*Dunlop* is not applicable. It seems to me, however, that precisely the opposite conclusion should be drawn. Although Congress allowed "any interested person" to petition the Administrator at any time to commence a proceeding to determine whether to issue an order aimed at remedying safety defects, 15 U.S.C. § 1410a(a) (1982), it certainly understood that responding to this extensive citizen involvement could impose a potentially tremendous burden on the agency. This concern, and the danger that defending against repeated citizen suits would hamper the agency in the discharge of its primary responsibilities, strikes me as having an important bearing on congressional objectives that are at least as "identifiable" as those the majority finds in the statute that was under consideration in *Dunlop*.[7]

Thus Congress left the manner of the agency's response to such petitions entirely within its discretion, requiring only that if the Administrator denied any such petition "[s]he shall publish in the Federal Register [her] reasons for such denial." 15 U.S.C. § 1410a(d) (1982). These provisions, in my view, suggest Congress did not foresee that the Administrator's decisions to deny these petitions would be subject to judicial review, but if somehow they did become subject to review, Congress intended that the scope of review should be confined to the only kind of "record" it required the agency to develop—the statement of reasons for denying the petition.

C.

As a final matter, the majority's citation of *Florida Power & Light Co. v. Lorion*,

811–812. This phrase comes instead from this court's reading of *Dunlap* in *Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d at 1053 n. 31, a decision that is binding upon us, and this phrase itself forms a subordinate part of the appropriate inquiry as it is set forth in *Natural Resources Defense Council, Inc. v. SEC*. Nor do I mean to imply that review of nonenforcement decisions "must automatically be limited to the agency's statement of reasons." Maj. op., *supra* at 812. When a nonenforcement decision falls within the holding in *Dunlop*, as some such decisions surely will, then review will be limited. But I do not claim that all such decisions are embraced by *Dunlop*.

7. Nor did *Dunlop* rest at all on the unpersuasive distinction the majority draws between issues requiring the agency to draw credibility determinations and complex issues of technical fact. See maj. op., *supra* at 813–814. Not only might the latter issues involve credibility determinations as well, but the legal premise underlying the distinction is itself faulty: appellate courts review credibility determinations all the time, albeit very deferentially, just as they also review agency determinations on complex technical issues, also very deferentially. *See, e.g., Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 103, 103 S.Ct. 2246, 2255, 76 L.Ed.2d 437 (1983).

470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), is inapposite. Although the factual setting in that case was very similar to the facts before us here, the Supreme Court focused its attention on an entirely different legal issue. *Lorion* concerned not the proper scope of review of agency action, but whether initial subject-matter jurisdiction to review certain orders of the Nuclear Regulatory Commission was vested in the district courts or in the courts of appeals. The Court held, as a matter of congressional intent determined from the governing statute, that jurisdiction to review such orders was vested in the appellate courts. The only real concern about this conclusion stemmed from the possibility that the appellate court (which, unlike a district court, does not make factual findings) would be forced to review the agency's decision on an insufficient factual record. The Court addressed this problem by pointing out that often a sufficient factual record will have been developed by the agency, and in other cases the court can remand to the agency for further investigation or explanation. *Id.* at 743–45. Similarly, the *Lorion* case on remand in this circuit is not a precedent in any meaningful sense of the word, since this court never even considered, let alone rejected, the applicability of *Dunlop* in a situation like the one we have here.

The Supreme Court's decision in *Lorion*, *see* 470 U.S. at 743–44, 105 S.Ct. at 1607, merely establishes two points that have no bearing on the issue in this case. First, it restates the accepted principle laid down in the APA that in the typical case judicial review is conducted on the basis of the entire administrative record. Second, it notes that whether such a record exists does not depend on whether the agency action was "formal" (taken after a formal hearing) or "informal." These points, however, work no change in the principles set out in *Dunlop*. The accepted scope of review in the typical case does not apply under the circumstances described there. This is a matter of congressional intent as set out in the governing statute, and mere restatement of the APA's general principle is unavailing. In *Lorion*, for example, no party questioned that the governing stat-

ute provided for judicial review, and there was no imputation that it provided for judicial review on anything other than the administrative record. 470 U.S. at 734–36 & n. 8, 105 S.Ct. at 1602–03 & n. 8 (construing 42 U.S.C. § 2239(b) (1982) and 28 U.S.C. § 2342(4) (1982)). This case differs on both points. In addition, there is no suggestion in *Dunlop* that its limited scope of judicial review always applies to informal agency action irrespective of the existence of an administrative record. The essence of the matter is not whether an administrative record exists—for one could always be developed—but whether Congress has evinced an intent in the governing statute to limit the scope of judicial review through such signals as granting "special discretion" to the agency, not requiring in the statute itself that the agency must compile a record, or manifesting other reason for concern about undue interference with particular agency functions.

In *Dunlop*, the Court was satisfied that the Secretary's "statement of reasons supporting his determination" would "enable the reviewing court intelligently to review the Secretary's determination," as long as it "inform[ed] the court and the [complainants] of both the grounds of decision and the essential facts upon which the Secretary's inferences are based." 421 U.S. at 571, 573–74, 95 S.Ct. at 1860, 1861. Given the context of the governing statute, a fuller administrative record was not thought to be needed for review. But we have as much here. It is not contended that the statement of reasons provided in this case is inadequate "to enable the court to determine whether the Secretary's decision was reached for an impermissible reason or for no reason at all." *Id.* at 573, 95 S.Ct. at 1861. On the contrary, the statement thoroughly explains the reasons why the agency denied the petition to commence new proceedings in this matter. *See* Appellees' Appendix at 35.

For these reasons, I believe we should limit the scope of our review to the statement of reasons the Administrator gave for denying the petition. That statement of reasons seems to me entirely adequate to

survive review on an arbitrary and capricious standard.

Since I would affirm the district court's decision, I respectfully dissent.