961 F.2d 963
 295 U.S.App.D.C. 209, 22 Envtl. L. Rep. 20,897
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Stephen E. BUBALA, Appellant,
v.
Manuel LUJAN, Jr., Secretary of the Interior, Appellee.
 No. 91-5099.
 United States Court of Appeals, District of Columbia Circuit.
 May 11, 1992.
Rehearing Denied July 16, 1992.
 
 Before HARRY T. EDWARDS, SILBERMAN and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on appeal from the judgment of the United States District Court for the District of Columbia and on the briefs and arguments of counsel. The issues have been given full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 The material facts are not in dispute. On August 28, 1981, Stephen E. Bubala filed a noncompetitive oil and gas lease offer for federal land on the Port Hueneme Naval Reservation (Reservation) in Ventura County, California. On December 3, 1985, the California State Office of the Bureau of Land Management (BLM) rejected Bubala's offer on the ground that the Reservation land was within a "Known Geological Structure" (KGS)[1] and therefore under 30 U.S.C. § 226(b)(1) could be leased only through competitive bidding. In reaching this conclusion, the BLM relied on the report of a Government geologist (Holden Report) which concluded that tar formations extended under the Reservation land rendering it part of the productive Oxnard KGS. Bubala appealed the BLM's decision to the Interior Board of Land Appeals (IBLA), asserting the land was not actually within the KGS and proffering a report by his own geologist (Bear Report) to support his position. By decision dated August 31, 1988, the IBLA affirmed the BLM, stating it was "unable to conclude that appellants have shown by a preponderance of the evidence" that the land was not in the Oxnard KGS. Gerald F. D'Unger, Stephen E. Bubala, 104 I.B.L.A. 104, 113 (1988). Bubala sought review of the IBLA's decision in the district court under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 et seq., and the parties filed cross motions for summary judgment. By memorandum opinion and order filed January 30, 1991, the district court granted summary judgment in the IBLA's favor. Bubala appeals the district court's judgment advancing four grounds for reversal. We find none of Bubala's arguments persuasive and accordingly affirm the district court's judgment.
 
 
 5
 First, Bubala argues the district court "never undertook a de novo analysis of the disputed issue of material fact," Brief of Appellant at 23, and accorded the IBLA excessive deference. Bubala's assertions misconstrue the scope of the district court's review which is both narrow and deferential.
 
 
 6
 Under the APA, the scope of review both here and in the district court is limited to determining whether the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Under this standard, the court "must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.' " Chritton v. NTSB, 888 F.2d 854, 856 (D.C.Cir.1989) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). "The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). We believe the district court properly applied this standard.
 
 
 7
 In the January 30, 1991 order granting summary judgment in the IBLA's favor, the district court reviewed at length Bubala's contentions, the evidence before the IBLA and the contradictory conclusions of the two geological reports. The court concluded the rejection of Bubala's offer was not arbitrary or capricious because the Government geologist "performed a thorough study," January 30, 1991 Order at 13 (Joint Appendix (JA) 227), and "considered relevant factors," id. at 17 (JA 231), and his conclusions were generally supported by record evidence, see id. at 16-17 (JA 230-31). The court determined in effect that the facts before the IBLA could be interpreted variously, as the two geologists did, to demonstrate that the land was or was not part of the KGS, that is, that "the parties simply differ on the proper inferences which should be drawn." Id. at 10 (JA 224). At that point, the court's review was finished; it could not conduct a de novo examination of the evidence or reach its own conclusion regarding whether the Reservation land lies in the Oxnard KGS. Because the IBLA considered the relevant factors and its determination evinces no clear error of judgment, neither the district court nor this court may disturb its decision.[2]
 
 
 8
 Second, Bubala asserts the district court abused its discretion by granting a motion for protective order filed by the IBLA and thereby denying Bubala necessary discovery. In granting the IBLA's motion, the district court stated:
 
 
 9
 The Court agrees with defendant that plaintiff's discovery request is premature. The Court will direct the defendant to file its motion for summary judgment, which it intends to base on the administrative record, within 30 days of this date. Plaintiff can, in his opposition to defendant's motion, demonstrate in what respects the administrative record is inadequate and can argue that the administrative decision should be (1) reversed, or (2) remanded, or (3) that further discovery is necessary and allowable on some particular issue.
 
 
 10
 JA 85 (April 18, 1989 Order at 1). We find no error in the district court's ruling.
 
 
 11
 In Lorion, supra, the Supreme Court described the narrow scope of evidentiary review permitted in a case such as this:
 
 
 12
 "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971).
 
 
 13
 If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.
 
 
 14
 470 U.S. at 743-44. This court further explained the limited role of reviewing courts in Center for Auto Safety v. Dole, 828 F.2d 799 (D.C.Cir.1987):
 
 
 15
 Judicial review under § 706(2)(A) determines whether the reasons for the agency's decision were legally permissible and reasoned ones, and whether there was adequate factual support for the decision. See [Association of Data Processing Serv. Orgs., Inc. v. Board of Governors, 745 F.2d 677, 683-84 (D.C.Cir.1984) ]. The reviewing court may not consider new evidence that was not before the agency when it made its decision. See, e.g., Lorion, 470 U.S. at 744, 105 S.Ct. at 1607. "When the arbitrary and capricious standard is performing that function of assuring factual support, ... whether the administrator was arbitrary must be determined on the basis of what he had before him and not on the basis of 'some new record made initially in the reviewing court.' " [ Association of Data Processing Serv. Orgs.], 745 F.2d at 683-84 (quoting Camp, 411 U.S. at 142, 93 S.Ct. at 1244).
 
 
 16
 Id. at 809-10. Because the district court's review was limited to the record compiled by the IBLA, we conclude Bubala was not entitled to the discovery he sought and the district court therefore did not abuse its discretion in granting the protective order.
 
 
 17
 Third, Bubala asserts the district court erred in upholding the IBLA's denial of an evidentiary hearing. We reject this ground for several reasons. First, we conclude that a formal evidentiary hearing is not generally required, or even contemplated, in a proceeding such as this. In Lorion, the Supreme Court explained: "[A] formal hearing before the agency is in no way necessary to the compilation of an agency record.... [A]gencies typically compile records in the course of informal agency action. The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred. See 5 U.S.C. §§ 551(13), 704, 706." 470 U.S. at 744. Second, Bubala never submitted a clear written request for a hearing before the IBLA as required under the IBLA's regulations. See 43 C.F.R. § 4.415 (1991) (when a party "desires a hearing to present evidence on an issue of fact ... a request must be made in writing and filed with the Board within 30 days after answer is due"). Instead, at the close of his "Statement of Reasons for Appeal," Bubala "request[ed] an opportunity to present oral testimony before the Board" "if the Board needs to have the case record supplemented if it has any question regarding the geographic limits of the Oxnard KGS," suggesting he was content to leave the matter of a hearing to the IBLA's sole discretion. Accordingly, Bubala cannot now complain that the IBLA declined to conduct one. Finally, we note that Bubala has not explained how the absence of a formal hearing prejudiced him inasmuch as he was afforded ample opportunity to submit evidence and argument to the BLM and the IBLA.
 
 
 18
 Fourth, Bubala contends the district court erroneously granted summary judgment without affording him the opportunity to support his claim regarding the KGS through discovery, thereby preventing him from establishing a disputed issue of material fact so as to preclude summary judgment. As we have already observed, however, the district court properly limited itself to the agency record and Bubala was not entitled to supplement that record with evidence he failed to submit to the IBLA. Accordingly, we reject Bubala's final ground for reversal.
 
 
 19
 Finally, we note that throughout Bubala's briefs he alleges an "institutional bias" against noncompetitive bids on the IBLA's part. Bubala has adduced no evidence, however, to support the claim of bias beyond the IBLA's individual decisions to classify tracts of land as within a KGS. So long as an individual KGS classification is lawful, as is the case here, we do not see how that classification, without more, demonstrates impermissible bias so as to warrant action by a reviewing court. We cannot ignore the limited scope of our review, as Bubala's arguments urge, based on an unsubstantiated claim of bias.[3]
 
 
 
 [1]
 Formerly, 43 C.F.R. § 3100.0-51 (1987) defined a KGS as "technically the trap in which an accumulation of oil or gas has been discovered by drilling and determined to be productive, the limits of which include all acreage that is presumptively productive."
 
 
 [2]
 Both here and before the district court Bubala has argued that Holden and the IBLA ignored some forty dry wells located between the Reservation land and the Oxnard KGS and identified in the Bear Report. See, e.g., Brief of Appellant at 26; Memorandum in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment at 11-12 (JA at 173-74). The record reveals, however, that both Holden and the IBLA addressed these wells, at least minimally. Holden concluded many of the wells cited in the Bear Report were "outside the zero isopach" and therefore "meaningless" and "irrelevant" to classification of the Reservation lands, Supplemental Comments on the Oxnard KGS by Kenneth D. Holden at 7, 8, and the IBLA order in turn recognized that the lands at issue were "within the zero Isopach." 104 IBLA at 110, 111 (JA at 16, 17). As for "dry" wells within the zero isopach, Holden noted that oil being produced at Oxnard "is a tar which is recovered only through the use of enhanced recovery techniques" and that "a hydrocarbon does not have to flow freely into a well bore for the hydrocarbon to be considered an 'oil' for the purposes of KGS classification." Supplemental Comments on the Oxnard KGS by Kenneth D. Holden at 2 (cited by IBLA, 104 I.B.L.A. at 111)
 
 
 [3]
 In support of the bias claim, Bubala attempted to introduce for the first time on appeal to this court the Declaration of John M. Parker, a consulting geologist, and supporting documents. That declaration purports to reflect the opinion of a panel of geologists and criticizes the IBLA's and BLM's KGS classifications both here and generally. By order issued January 31, 1992, we granted the IBLA's motion to strike the new materials, which were appended to Bubala's Reply Brief, because they were not presented below. Just as the district court may generally consider only the administrative record, see supra pages 4-5, our review is similarly confined to the evidence presented to the district court. See National Anti-Hunger Coalition v. Executive Comm. of the President's Private Sector Survey on Cost Control, 711 F.2d 1071, 1075 (D.C.Cir.1983). "The proper procedure for dealing with newly discovered evidence is for the party to move for relief from the judgment in the district court under rule 60(b) of the Federal Rules of Civil Procedure." Goland v. Central Intelligence Agency, 607 F.2d 367, 370 (D.C.Cir.1979) (on rehearing), cert. denied, 445 U.S. 927 (1980)