**Paul LEVIN, Plaintiff,**

v.

**CONNECTICUT BLUE CROSS, INC. and the United States Office of Personnel Management, Defendants.**

**No. 77 C 2389.**

United States District Court, N. D. Illinois, E. D.

March 13, 1980.

---

**7.** See note 1, *supra.*

Donald J. Duffy, Kirkland & Ellis, Chicago, Ill., for plaintiff.

Edward Moran, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

### Motion for Summary Judgment

MAROVITZ, Senior District Judge.

Plaintiff Paul Levin brings this action against Connecticut Blue Cross, Inc. (the "Carrier") and the United States Office of Personnel Management (OPM)[1] to recover benefits made available to plaintiff pursuant to the Federal Employee Health Benefits Act (the "Act"),[2] 5 U.S.C. §§ 8901–8913. Count I of plaintiff's two-count second amended complaint alleges that the Carrier breached its contractual obligation to plaintiff under the Government-Wide Service Benefit Plan (the "Plan"), created pursuant to the Act, by refusing to pay certain benefits to cover costs incurred by plaintiff's son's hospitalization. Count I seeks recovery of $67,165.55 in damages from the Carrier. Count II alleges that OPM acted arbitrarily and capriciously when it refused to order the Carrier to pay the disputed benefits. Pending before the Court is OPM's motion for summary judgment on Count II of the second amended complaint.

The facts pertinent to the disposition of the instant motion may be briefly stated. Plaintiff at all relevant times was a member of the Plan, which extended coverage to his son, Michael Levin. From November 4, 1975 to December 14, 1977, Michael Levin was an inpatient at the Institute of Living in Hartford, Connecticut for long-term psychiatric treatment. By letter dated April 20, 1976, the Carrier notified plaintiff that benefits covering his son's hospitalization would not be extended beyond April 23, 1976 because the Carrier had determined that as of November 12, 1975 the hospitalization of plaintiff's son was for milieu therapy.[3] By letter dated April 29, 1976, the plaintiff requested that the Carrier reconsider its decision. See 5 C.F.R. § 890.-106(b). The Carrier allegedly never responded to plaintiff's letter.[4]

On July 13, 1976, the plaintiff requested by letter that OPM review the Carrier's decision to discontinue paying benefits for plaintiff's son's hospitalization. Pursuant to 5 C.F.R. § 890.106, OPM reviewed the Carrier's decision, and by letter dated December 27, 1976, indicated to plaintiff OPM's refusal to order the Carrier to pay plaintiff's claim.

OPM's duty to review a Carrier's denial of benefits is not an explicit creature of the Act. Rather, 5 C.F.R. § 890.106, promulgated under 5 U.S.C. § 8913, creates this duty and establishes the procedures by which OPM is to conduct its review. This Court has previously ruled that it has jurisdiction to review OPM's decision with respect to plaintiff's claim pursuant to 5 U.S.C. § 8912. *Levin v. Connecticut Blue Cross, Inc.*, Civ.No. 77–2389 (N.D.Ill., June 28, 1979) (granting summary judgment in OPM's favor as to plaintiff's first amended complaint). 5 U.S.C. § 8912 provides:

> The district courts of the United States have original jurisdiction, concurrent with the Court of Claims, of a civil action or claim against the United States founded on this chapter.

1. The "OPM action" of which plaintiff complains was actually undertaken by OPM's predecessor, the United States Civil Service Commission (the "Commission"). The Court will refer herein to the Commission's acts as those of OPM.

2. Under the Act, the federal government, through OPM, enters into health insurance contracts with private insurance carriers on behalf of federal employees. Responsibility for the premiums paid under the contracts is shared by the government and participating employees.

3. The primary purpose of milieu therapy, according to OPM, is to provide the patient with a controlled change of environment.

4. Apparently, the Carrier never sought to recoup those benefits paid for the period of plaintiff's hospitalization from November 12, 1975 to April 23, 1976.

By its terms, therefore, section 8912 appears to authorize the instant action against OPM since it is one founded upon regulations promulgated under the Act. 5 U.S.C. § 8913; 5 C.F.R. § 890.106. In its June 28, 1979 opinion, the Court found jurisdiction over the instant action by relying upon the reasoning of the District of Columbia Circuit Court of Appeals in *National Treasury Employees Union v. Campbell*, 589 F.2d 669 (D.C.Cir.1978) (an OPM decision made pursuant to section 8902(i) of the Act is subject to judicial review under section 8912 of the Act). Moreover, this Court's conclusion that OPM decisions made pursuant to 5 C.F.R. § 890.106 are reviewable is supported by a reading of the regulation concerning judicial review, 5 C.F.R. 890.108, and OPM's own interpretation of 5 C.F.R. § 890.106. 40 Fed.Reg. 25433 (1975). As to the latter, OPM refers to the availability of judicial review of its section 890.106 decisions in the notice implementing that regulation. *Id.* It is hornbook administrative law that an agency's interpretation of the statute which it is charged to administer or its own regulations is to be accorded great weight by the courts. *E. g., United States v. American Trucking Associations*, 310 U.S. 534, 549, 60 S.Ct. 1059, 1067, 84 L.Ed. 1345 (1940); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Thus, although the question of whether OPM action under 5 C.F.R. 890.106 is reviewable is apparently one of first impression, *cf. National Treasury Employees Union v. Campbell*, 589 F.2d 669; *Stangl v. United States*, Civ.No. 78–135 (N.D.Ill., Apr. 25, 1979); *Edward J. Meyer Memorial Hospital v. Stetz*, 433 F.Supp. 323 (W.D.N.Y.1977), the Court today affirms the correctness of its earlier ruling in this regard.[5] Further, the Court finds that the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 551–59, 701–06, is applicable to the instant action because OPM action undertaken pursuant to 5 C.F.R. § 890.106 is made reviewable by the Act, 5 U.S.C. § 704, and OPM's section 890.106 decisions do not fit within any of the APA's exceptions. 5 U.S.C. § 701.

Turning then to the merits of the instant motion, the Court begins by noting that a summary judgment is not to be granted unless there are no genuine issues as to any material facts and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As to the first prong of this standard, the Court finds that there are no genuine factual issues herein that are material to the Court's review of OPM's decision in this matter.

Having determined that the Administrative Procedure Act is applicable to plaintiff's claim against OPM, the applicable standard of review is whether OPM's decision to not order the Carrier to pay plaintiff the disputed benefits was an arbitrary or capricious act. 5 U.S.C. § 706(2)(A). Thus, the Court arrives at the only significant area of dispute between plaintiff and OPM, other than the fundamental question of this action of whether OPM acted arbitrarily or capriciously. Namely, OPM contends that the Court's review of OPM's decision must be confined to a review of its letter, dated December 27, 1976, to plaintiff, while plaintiff urges the Court to examine all of the materials which OPM had before it when it made its decision.

OPM argues that *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) is instructive on this point. The Court agrees. In *Dunlop* the Supreme Court reversed the finding of the Third Circuit that, pursuant to 5 U.S.C. § 706(2)(A), courts should conduct a trial type inquiry into the Secretary of Labor's decisions under 29 U.S.C. § 482 to not institute an action to set aside a challenged union election. *Id.* at 566, 95 S.Ct. at 1857. Arguably, the Third Circuit's position, and the position of the plaintiff in this action, is supported by the last sentence of 5 U.S.C. § 706, which reads "[i]n making the foregoing determinations [*i. e.*, whether an agency's decision was arbitrary and capricious], the court shall review the whole record . . . ."

---

**5.** The District of Columbia Circuit Court of Appeals has implied that jurisdiction over this type of action would exist under 28 U.S.C. § 1331(a), in conjunction with provisions of the APA. *National Treasury Employees Union v. Campbell*, 589 F.2d at 673 n. 7.

After first conducting an inquiry into the policies involved in Congress's concern with labor elections, the Supreme Court in *Dunlop* concluded that a court reviewing a decision of the Secretary is not to substitute its judgment for that reached by the Secretary. *Id.* at 571, 95 S.Ct. at 1859. This finding, the Court reasoned, compelled the further conclusion that Congress's policies would be best served by limiting judicial review to the Secretary's letter setting forth his decision, provided the letter explained the reasons underlying the Secretary's decision.[6] *Id.* at 572–73, 95 S.Ct. at 1860–1861.

■ Although *Dunlop* obviously was concerned with different facts and policies than obtain in the instant case, similar considerations lead this Court to find that it is not to substitute its judgment for that of OPM. *See National Treasury Employees Union v. Campbell*, 589 F.2d at 678–79. Of course, since OPM's review of Carrier decisions to not pay benefits was created pursuant to regulation, it can hardly be said that Congress in any manner considered what policies were to be served by such review. However, since Congress presumably left it in OPM's discretion to create such a right to review, it follows that OPM is permitted to exercise considerable discretion in making the determinations required by 5 C.F.R. § 108.106. *See id.; see also Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.*, 435 U.S. 519, 525, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). Therefore, the Court concludes that when it reviews such OPM decisions it is not to substitute its judgment for that arrived at by OPM. Consequently, again guided by considerations analogous to those present in *Dunlop*, the Court further holds that the question of whether OPM acted arbitrarily or capriciously must be answered solely by an examination of its letter dated December 27, 1976.

■ In this connection, plaintiff argues that the *Dunlop* approach to judicial review of administrative action is an exception to general principles with respect to the reviewability of administrative action. Perhaps *Dunlop* is such an exception; however, the Court finds that judicial review of OPM's action pursuant to 5 C.F.R. § 890.106 should fall within any such type of exception carved out by *Dunlop*. Further, plaintiff's citation to cases involving agency action undertaken pursuant to the requirements of the National Environmental Protection Act (NEPA) is clearly inappropriate in view of NEPA's embodiment of Congressional concerns wholly distinct from those present in the instant case. *E. g., Silva v. Lynn*, 482 F.2d 1282 (1st Cir. 1973).

As in *Dunlop*, the above holding is of course predicated upon a preliminary finding that the letter sets forth sufficient reasons for OPM's decision to enable the Court to make the determination required by 5 U.S.C. § 706(2)(A). In the instant case, the Court does find that OPM's decision letter contains sufficient reasons. Indeed, the Court notes that the letter evinces that OPM gave rather thorough consideration to plaintiff's claim for benefits.

In order to determine whether OPM acted arbitrarily or capriciously, the Court must ascertain both whether OPM considered the relevant factors and whether OPM committed a clear error of judgment. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The relevant factors for a review by OPM of a Carrier's decision not to pay benefits are set forth in its own regulation. 5 C.F.R. § 890.106(d).[7] Section

---

6. Although the Supreme Court did not explicitly resolve the apparent conflict between its holding in *Dunlop* and the mandate of the last sentence of 5 U.S.C. § 706, it is arguable that where an agency's decision is reached by way of an informal process, a letter informing interested parties of the agency's decision which is accompanied by reasons therefor is the "whole record."

7. Since Congress has invested OPM with considerable discretion with respect to the performance of its duties under the Act, the procedures by which OPM reviews Carrier decisions are themselves immune from attack absent either Constitutional constraints or extremely compelling circumstances. *E. g., Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.*, 435 U.S. at 525, 98 S.Ct. at 1202.

890.106(d) requires OPM to review all of the original evidence upon which the Carrier denied the claim and any additional evidence submitted. OPM's letter to plaintiff indicates that it considered plaintiff's son's admission records, the notes of the nurses attending to plaintiff's son, and the other hospital records pertaining to the treatment received by plaintiff's son. Further, OPM's letter explains why its evaluation of these materials led it to concur with the Carrier in its finding that eight days after plaintiff's son's admission, his condition no longer mandated a hospital bedpatient setting. For example, while plaintiff's son was apparently admitted because of suicidal behavior, eight days after his admission he was permitted to move about the hospital on his own and was found to be logical and pleasant by hospital personnel. In sum, the Court finds that OPM considered the relevant factors and did not make a clear error of judgment, and, therefore, satisfactorily discharged its duties under section 890.106(d).

Plaintiff attempts to make much of the fact that the letter notes that plaintiff's son was being administered psychotropic medication upon admission, and then fails to mention whether the changes in plaintiff's son's treatment eight days after his admission included the discontinuance of this medication. Plaintiff assumes then, without stating, that plaintiff's son continued to receive the medication and, therefore, plaintiff argues, it is irrational to conclude that plaintiff's son was not receiving the type of treatment after November 12, 1976 that is covered by the Plan. However, the Court is unwilling to find on the basis of OPM's failure to state whether plaintiff's son continued to receive psychotropic medication that OPM's letter of December 27, 1976 reveals its decision to be "a clear error of judgment." *See id.*

Accordingly, the Court finds that OPM is entitled, as a matter of law, to a judgment in its favor as to plaintiff's claim against it. Therefore, Count II of plaintiff's complaint is hereby dismissed. However, because the question of whether OPM properly exercised its authority under 5 C.F.R. § 890.106 is one that is qualitatively distinct from the one of whether the Carrier breached its contract with plaintiff by refusing to pay the disputed benefits, the Court wishes to make clear that it today in no way intimates any opinion as to the merits of Count I of plaintiff's complaint.