notes that the WARN Act itself requires that notice be given to *each* representative of the

IT IS HEREBY ORDERED that Plaintiffs' claims for relief are **DISMISSED** with prejudice.

Dixie L. ROSEBERRY

v.

BLUE CROSS AND BLUE SHIELD OF NEBRASKA.

No. 8:CV 92–371.

United States District Court, D. Nebraska.

Dec. 18, 1992.

affected employees.  29 U.S.C. § 2102(a).

Gregory W. Plank, Bellevue, NE, for plaintiff.

Thomas E. Johnson and Steven D. Davidson, Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the parties' cross motions for summary judgment (Filings 7 and 14). After careful consideration, the court finds that the defendant's motion for summary judgment should be granted and the plaintiff's motion for summary judgment should be denied for the reasons more fully discussed below.

## I. BACKGROUND

The plaintiff, Dixie Roseberry, is a federal employee, employed by the Veteran's Administration, and is a participant in the Blue Cross/Blue Shield Association's Federal Employee Program (the "plan"). (Filing 1—Petition for Injunction at ¶¶ 1 and 4). In January of 1986, she was diagnosed as having advanced metastatic breast cancer. (Id. ¶ 6). She was treated aggressively with surgery, radiation therapy and chemotherapy and had six years of disease free survival under the supervision of Dr. Johnson. (Id.). In November of 1991, plaintiff had a recurrence of her breast cancer involving "me-diastinum with invasion in the pericardium, her pleural membrane, her sternum and left third rib. She also had T–9 thoracic vertebral body involvement." (Id.). She was treated with standard chemotherapy and this treatment failed to eliminate the cancer. (Id.).

Dr. Johnson has recommended that she begin treatment known as high dose chemotherapy accompanied by an autologous bone marrow transplant ("HDC–ABMT"). (Dr. Johnson affidavit, Exhibit "A" of Filing 1). An autologous bone marrow transplant is

a procedure whereby the patient's bone marrow is harvested from the patient so that the patient is able to receive vastly increased doses of chemotherapy and/or radiation therapy which would have destroyed the bone marrow and caused the patient's death had the bone marrow not been removed. After the high dose chemotherapy is completed, the marrow is reinfused intravenously. (Filing 1—Petition for Injunction at ¶ 7).

In accordance with the provisions of the plan the plaintiff submitted a letter requesting a predetermination of the benefits for this treatment. (Id. at ¶ 10). On December 27, 1991, the defendant advised the plaintiff that her request for authorization of the benefit was denied based on the defendant's interpretation of the plan agreement which, according to the defendant, excludes coverage for high dose chemotherapy in conjunction with a bone marrow transplant for breast cancer. (Id.; See also, December 27, 1991, letter attached to petition as exhibit "B"—see Filing 1). The plaintiff requested Blue Cross to reconsider its decision, and the defendant again denied benefits. (January 8, 1992 letter attached to petition as exhibit "C"—see Filing 1).

The plaintiff then appealed the denial of coverage to the Office of Personnel Management (OPM). (Petition for Injunction at ¶ 12—Filing 1). The OPM denied the plaintiff's appeal on January 22, 1992. (January 22, 1992 letter attached to petition as exhibit "D"—see filing 1).

The plaintiff commenced this action in the Sarpy County District Court on July 1, 1992.

The action was subsequently removed to this court by the defendant on July 10, 1992. (See filing 1). Cross-motions for summary judgment were filed, and the matter became ripe for decision on October 23, 1992, upon receipt of the last brief. The issue in this case is whether the provisions of the plan exclude payment for the requested services.

## II. DISCUSSION

### A. Standard of Review in General

The parties disagree as to what standard of review this court should utilize in its review of the OPM's decision. The defendant contends that the correct standard of review is provided under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), which provides for an "arbitrary and capricious standard" which is limited in scope and deferential in character. It is the plaintiff's contention, however, that as this case involves the interpretation of contract provisions, that this court's review should be de novo.

### 1. The FEHBA Statutory Scheme

The plaintiff's claim for benefits arises under the Federal Employees Health Benefits Act (FEHBA). FEHBA was enacted for the purpose of establishing a comprehensive program to provide federal employees, retirees and their dependents with subsidized health care benefits. 5 U.S.C. §§ 8901–8913 (1988). Under FEHBA, the United States, through the Office of Personnel Management (OPM), contracts with various private carriers in order to offer health benefit plans with a variety of coverage levels and costs. OPM enters into annual federal procurement contracts with private carriers, which in turn provide the health plan benefits to federal employees. 5 U.S.C. § 8903. Thus, health coverage is provided to federal employees under FEHBA only through contracts negotiated between the United States (by OPM) and a private entity, and not by individual contracts between federal employees and a carrier. (Declaration of Reginald M. Jones, Jr., Filing 10 at ¶ 5). See *Christiansen v. National Savings & Trust Co.*, 683 F.2d 520, 530 (D.C.Cir.1982).

The OPM is empowered by Congress with broad authority to decide on the benefits and exclusions in the FEHBA plans. OPM is authorized by statute to contract for such benefits, maximums, limitations, and exclusions as it "considers necessary or desirable." 5 U.S.C. § 8902(d); see *Doe v. Devine*, 703 F.2d 1319, 1321, 1326 n. 31 (D.C.Cir.1983).

### 2. OPM Administrative Review of Claims Denial

Under FEHBA, a carrier must pay a benefits claim if OPM finds that the contract entitles an individual to such payment. 5 U.S.C. § 8902(j). Pursuant to the statute, OPM has established, by regulation, a process whereby individuals who believe that the carrier has improperly denied a claim can seek administrative review of that decision. 5 C.F.R. § 890.105 (1992). Beneficiaries who disagree with the OPM's determination may then bring a lawsuit against the carrier "to recover on a claim for health benefits." 5 C.F.R. § 890.107. OPM has concluded that "its decisions on disputed claims, including its interpretations of the benefits provisions in the statements of benefits, are entitled to deferential review by the courts under the arbitrary and capricious standard of review." (Declaration of Reginald M. Jones, Jr., Filing 10 at ¶ 15).[1]

---

1. Reginald M. Jones, Jr., is employed as Assistant Director for Insurance Programs at the OPM. In his capacity as Assistant Director he is responsible for the oversight of negotiation and administration of all contracts under FEHBA. (Filing 10 at ¶ 2 which cites to 5 U.S.C. § 8901, et seq. as support for this proposition.) According to Mr. Jones, the OPM has concluded that its decisions should be accorded deferential review for three reasons which, in sum, boil down to a claim that a de novo review of its decisions would be inconsistent with the Congressional objectives for FEHBA. More specifically, he states that it would be inconsistent with the objective that uniform benefits be afforded FEHB enrollees because a court would be free to substitute its judgment for OPM's which would result in non-uniform interpretation and administration of benefit terms. In addition, the courts would be free to ignore OPM's decisions which would render OPM's decisions and its process ineffective. Finally, de novo review would be inconsistent with the Congressional mandate that OPM ensure that carriers pay only the benefits covered in their plans because the courts, not OPM, would be making final decisions on benefit disputes. (Declaration of Reginald M. Jones, Jr., Filing 10 at ¶ 15).

## B. Deferential Standard of Review

■ I believe that the appropriate standard of review of the OPM's decision is "arbitrary and capricious." See, e.g. *Caudill v. Blue Cross–Blue Shield*, No. 92–94–Civ–7–F (unpublished opinion, E.D.N.C.1992);[2] see also, *Appeal of Bolden*, 848 F.2d 201 (D.C.Cir.1988) (the district court properly applied a narrow standard of review to OPM's decision to adopt a cut off date for refunds from a federal employee health benefit plan's special reserve account under the highly deferential arbitrary and capricious standard); *Arrington v. Group Hospitalization and Medical Services, Inc.*, 806 F.Supp. 287 (D.D.C.1992) (a court must defer to an OPM decision unless it finds that the decision is plainly erroneous or is inconsistent with the agency's regulations or the terms of the contract).

In *Caudill, supra*, which is based on almost identical facts to the case at bar, the court stated:

> OPM's decision on Ms. Caudill's claim is a valid exercise of its delegated authority from Congress to decide disputed claims under FEHB plans, and is entitled to review under the arbitrary or capricious standard of the APA. 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–16 [91 S.Ct. 814, 822–23, 28 L.Ed.2d 136] (1971). See also, *Camp v. Pitts*, 411 U.S. 138, 142 [93 S.Ct. 1241, 1244, 36 L.Ed.2d 106] (1973). *Caudill*, at 25.

At this point in the text of the case, a footnote appears which states that

> [t]he APA unquestionably applies to OPM and its claims decisions because, by its terms, the APA applies to all actions of federal agencies unless prohibited by statute. 5 U.S.C. 701; *Volpe*, 401 U.S. at 410 [91 S.Ct. at 820]. Likewise, the APA applies to the OPM decision on a disputed claim because that decision is an agency action within the meaning of that term in the APA. Agency action includes the grant or denial of "relief," defined as, inter alia, a remedy for the recognition of a

claim. 5 U.S.C. §§ 551(11) and (13), incorporated by reference into 5 U.S.C. § 701(b)(2). *Caudill*, at 25 n. 3.

The court then goes on to state that the federal courts have recognized the applicability of the APA to OPM's claims decisions and have applied the arbitrary and capricious standard of review to OPM's decisions on claims. *Caudill* at 25 (citing *Myers v. United States*, 767 F.2d 1072, 1074 (4th Cir.1985) (recognizing the deferential standard of review of OPM decisions); and *Levin v. Connecticut Blue Cross, Inc.*, 487 F.Supp. 385, 388 (N.D.Ill.1980) (when court reviews decision of OPM refusing to order carrier to pay disputed benefit under government service plan, it is not to substitute its judgment for that of OPM).

Therefore, I conclude that the deferential "arbitrary and capricious" standard applies. But, even if the standard of review were "de novo", I have concluded, as indicated below, that the ultimate outcome of this case would be the same.

## III. DISCUSSION OF BENEFITS UNDER THE PLAN

The court notes that there are two plans, the 1991 and 1992 policies, which have been submitted for consideration. In paragraph 18 of the complaint, the plaintiff states that she has attached a copy of the plan "in effect in 1991 and governing the Plaintiff's claims...." The plaintiff goes on to state in paragraph 19, however, that "[a]lternatively, ... [a] copy of the benefit plan in effect in 1992 and governing the Plaintiff's claims is attached...." Neither party presents any argument or discussion as to which plan is controlling in this situation. However, as the court believes the result is the same under both policies, I will review both policies, and discuss why both specifically exclude coverage for the proposed treatment.

### A. Plan Language

The "Surgical–Medical Benefits" section of the 1991 plan, under the subsection entitled "Organ Transplants/Donor Expenses" pro-

---

**2.** Inasmuch as *Caudill* is unreported, I have attached a copy of this opinion to this memorandum and order. ■

vides, in relevant part, that what is covered is the following human transplant procedure:

Autologous bone marrow for 1) Acute lymphocytic or non-lymphocytic leukemia, 2) Advanced Hodgkin's lymphoma, 3) Advanced Non–Hodgkin's lymphoma, 4) Advanced neuroblastoma.

Under the same section, in the subsection entitled "What is Not Covered" the plan states "Services or supplies for or related to surgical transplant procedures including artificial or human organ transplants other than those specifically listed as covered." (Filing 1, 1991 plan at p. 13).

The language of the 1992 plan is identical to that of the 1991 plan except for the addition of a variety of other cancers to the list of cancers that are included for autologous bone marrow transplants. In addition, there is clarifying language added to the exclusionary language contained in the subsection of what is not covered which specifically exempts "high dose chemotherapy when supported by transplant procedures." (Filing 1, 1992 plan at p. 16.)

The 1992 plan specifically provides, in relevant part, that what is covered is human organ transplant procedures for

Autologous bone marrow (autologous stem cell support) and autologous peripheral stem cell support, for 1) Acute lymphocytic or non-lymphocytic leukemia, 2) Advanced Hodgkin's lymphoma, 3) Advanced Non–Hodgkin's lymphoma, 4) Advanced neuroblastoma, and 5) Testicular, Mediastinal, Retroperitoneal and Ovarian germ cell tumors. (Filing 1, 1992 plan at 16).

It then goes on to provide for what is not covered as follows:

"Services or supplies for or related to surgical transplant procedures including artificial or human organ transplants other than those specifically listed as covered. **Related services or supplies include administration of high dose chemotherapy when supported by transplant procedures.**" (Id.—emphasis added).

## B. Coverage for Treatment Excluded

■ After reviewing the language of both the 1991 and 1992 plans, I have concluded that the decision of the OPM was not arbitrary and capricious in that the language of the plans specifically excludes coverage for the proposed treatment. Although the 1992 plan more specifically exempts coverage, it is clear that the 1991 plan exempts coverage for the proposed treatment as well.

The language of both the 1991 and 1992 plans identify specific conditions for which an autologous bone marrow transplant is provided for under the plan which include 1) acute lymphocytic or non-lymphocytic leukemia, 2) advanced Hodgkin's lymphoma, 3) advanced Non–Hodgkin's lymphoma, and 4) advanced neuroblastoma. The 1992 plan additionally provides coverage for an autologous bone marrow transplant in relation to testicular, mediastinal, retroperitoneal and ovarian germ cell tumors. (Filing 1, 1992 plan at 16). Both plans then state that the plan does not provide coverage for "services or supplies for or related to surgical transplant procedures including artificial or human organ transplants **other than those specifically listed as covered.**" (Filing 1, 1991 plan at 13, 1992 plan at 16, emphasis added). Therefore, since neither plan **specifically** provides coverage for an autologous bone marrow transplant in relation to breast cancer it is clear the proposed treatment is not a benefit to which plaintiff is entitled under either plan.

In *Caudill, supra,* the plaintiff was suffering from breast cancer and Blue Cross denied benefits based on the language of the 1992 FEHB insurance plan. The OPM affirmed the decision, and the plaintiff appealed. The court granted the defendant's motion for summary judgment and stated that:

OPM's decision is rational. OPM has included in the Service Benefit Plan specific language that sets forth which transplant procedures and related services are covered and which are not. The Plan provides that the following autologous bone marrow transplants are covered:

"Autologous bone marrow (autologous stem cell support) and autologous peripheral stem cell support, for 1) Acute lymphocytic or non-lymphocytic leukemia, 2) Advanced Hodgkin's lymphoma, 3) Advanced Non–Hodgkin's lymphoma, 4) Advanced neuroblastoma, and

5) Testicular, Mediastinal, Retroperitoneal and Ovarian germ cell tumors."

Autologous bone marrow transplant for treatment of breast cancer is not one of the listed diagnoses for which transplants are covered.

The plan also states what is not covered:

"Services or supplies for or related to surgical transplant procedures including artificial or human organ transplants other than those specifically listed as covered. Related services or supplies include administration of high dose chemotherapy when supported by transplant procedures."

Thus, unlisted transplants and related services, including high dose chemotherapy, are specifically excluded. OPM's decision denying the request for preauthorization of benefits is entirely consistent with the plain language of the Plan. Accordingly, OPM's decision is rational and supported by the Plan document. *Caudill,* at 24–25.

Although it is true that the 1991 plan does not specifically state, as does the 1992 plan, that excluded services includes the administration of high dose chemotherapy, the language that was added to the 1992 plan only further clarifies what is excluded under the 1991 plan. The added language does not change the 1991 coverage language which clearly excludes benefits for transplants which are not specifically listed. As breast cancer is not specifically listed as a covered condition when treated by autologous bone marrow transplant and chemotherapy, the 1991 plan provides no relevant benefits.

The plaintiff contends that the "plain meaning of the contract provides for coverage of chemotherapy treatment without exception." (Plaintiff's Brief at 7). The plaintiff points to the section in the plan entitled "Other Medical Benefits" and cites to page 18 of the 1991 plan and page 21 of the 1992 plan stating that "[t]he plan's discussion of chemotherapy treatment and coverage is entirely within this section" and that there is no cross-reference of any purported exclusion in this section. *(Id.).*

This argument is not persuasive, however, in that, as the plaintiff admits, the listing of chemotherapy is found under the section of "Outpatient Hospital Care" and "Other Outpatient Services." It is obvious that the treatment being requested by plaintiff could not possibly be done on an outpatient basis.

But the plaintiff argues that despite the fact that the section "discusses only outpatient chemotherapy coverage, one would logically assume that the coverage for inpatient chemotherapy would be at least equal to that provided for outpatient treatment" and that "[i]t is nonsensical for the Plan to cover the outpatient chemotherapy but not inpatient chemotherapy." *(Id.* at 8). Therefore, the plaintiff argues, that "[i]n sum, the plain language of the Plan establishes coverage for chemotherapy treatment on an outpatient basis; establishes coverage for inpatient treatment; and gives no indication whatsoever that exclusions found in the "Surgical–Medical Benefits" section of the plan are in any way intended to limit benefits for generally accepted chemotherapy treatment.

I do not find the plaintiff's argument persuasive because it is a medical-business judgment whether "out patient chemotherapy" **without transplant** involves the same medical business risks as "in patient chemotherapy" **accompanied by a transplant**. I simply cannot assume, as plaintiff's counsel does, that it is "nonsense" for the defendant to treat the procedures differently for insurance purposes.

## IV. CONCLUSION

I conclude that the OPM's decision in denying the plaintiff's request for coverage of the high dose chemotherapy accompanied by an autologous bone marrow transplant ("HDC–ABMT") was not arbitrary and capricious in that both the 1991 and 1992 plans exclude coverage for the treatment. In fact, because of the plain language of both plans, I would affirm denial of coverage under either plan even if the decision were reviewed de novo. Sadly, I find that the defendant's motion for summary judgment should be granted and the plaintiff's motion for summary judgment should be denied.

IT IS ORDERED:

1. The plaintiff's motion for summary judgment is denied (Filing 14);

2. The defendant's motion for summary judgment is granted (Filing 7); and

3. This case is dismissed with prejudice.